UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-2(c)

Mark S. Lichtenstein
**CROWELL & MORING LLP**
590 Madison Avenue, 20th Floor
New York, NY  10022
Telephone:  (212) 223-4000
Fax:  (212) 223-4134
mlichtenstein@crowell.com

Counsel for Debtors and Debtors in Possession

```
 FILED
JAMES J. WALDRON, CLERK

MAR 0 2 2010

U.S. BANKRUPTCY COURT
    NEWARK, N.J.
BY              DEPUTY
```

In re:

NORTH COUNTRY BBQ VENTURES, INC., *et al.*,

                    Debtors in Possession.

Case No.:  09-44194(MS)

Jointly Administered

Hearing Date and Time:
March 1, 2010 at 12:00 p.m.

Judge:  Honorable Morris Stern

**ORDER PURSUANT TO SECTIONS 105, 363 AND 365 OF THE
BANKRUPTCY CODE (I) AUTHORIZING SALE OF CERTAIN ASSETS
OF THE DEBTOR FREE AND  CLEAR OF ALL LIENS, CLAIMS
AND ENCUMBRANCES PURSUANT TO ASSET PURCHASE AGREEMENT,
(II) APPROVING THE ASSET PURCHASE AGREEMENTS, (III)  AUTHORIZING AND
APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS, AND (IV) WAIVING FOURTEEN-DAY STAY UNDER BANKRUPTCY
RULES 6004(H) AND 6006(D)**

The relief set forth on the following pages, numbered two (2) to thirty-one (31), is hereby

**ORDERED.**

3/2/10

Page (2):
Debtor:         North Country BBQ Ventures, Inc. *et al.*
Case No.       09-44194 (MS)
Caption of Order:   Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I) Authorizing Sale of Certain Assets of the Debtor Free and Clear of All Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement, (II) Approving the Asset Purchase Agreements, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules 6004(h) and 6006(d)

---

Upon consideration of the relief requested in the Debtors' verified application dated January 13, 2010 (the "Motion")[1], pursuant to sections 105, 363 and 365 of chapter 11, title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for an order (i) authorizing and approving a sale of certain assets related to restaurants operated by certain of the Debtors (the "Assets") free and clear of liens, claims and encumbrances (the "Sale") upon the terms and conditions set forth in the Asset Purchase Agreement (the "APA"), annexed to this Order as Exhibit "A", between certain of the Debtors,[2] on the one hand, and Famous Dave's of America, Inc. ("Buyer"), on the other hand, or, if a Sale to the Buyer is unable to close under the terms of the APA, authorizing and approving the Sale to the Back-Up Bidder (as defined in paragraph G below) on substantially similar terms to those contained in the Back-Up APA (as defined in paragraph 40 below); (ii) approving the APA and the Back-Up APA; and (iii) authorizing and approving the assumption and assignment to Buyer (or the Back-Up Bidder, if applicable) of certain executory contracts and unexpired leases identified in the APA (or the Back-Up APA, if applicable) (the "Assigned Contracts") upon the terms and conditions set forth in the APA (or the Back-Up APA, if applicable) and the procedures established pursuant to the Procedures

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion or APA, as applicable.

[2] The following Debtors are parties to the APA: North Country BBQ Ventures, Inc.; North Country BBQ Ventures (Smithtown), LLC; North Country BBQ Ventures (Westbury), LLC; North Country BBQ Ventures (Mountainside), LLC; North Country BBQ Ventures (Brick), LLC; North Country B.B.Q. Ventures (Hamilton), LLC; North Country BBQ Ventures (New Brunswick), LLC; and [North Country BBQ Ventures (Woodbridge), LLC].

Page (3)
Debtor:                North Country BBQ Ventures, Inc. *et al.*
Case No.               09-44194 (MS)
Caption of Order:      Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I)
                       Authorizing Sale of Certain Assets of the Debtor Free and Clear of All
                       Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement,
                       (II) Approving the Asset Purchase Agreements, (III) Authorizing and
                       Approving the Assumption and Assignment of Certain Executory
                       Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules
                       6004(h) and 6006(d)

---

Order (hereinafter defined); and the Court having entered on January 8, 2010 the Order

Approving Bidding and Auction Procedures and Scheduling Matters in Connection Therewith, as

amended by Order dated January 13, 2010 (the "Procedures Order"), which Procedures Order

adopted certain Auction Procedures attached as Exhibit "A" to the Procedures Application, as

amended and attached as an exhibit to the Notice of Adjournment dated February 8, 2010 (the

"Auction Procedures"); and, in accordance with the Procedures Order, the Debtors having

commenced the Auction on February 24, 2010 and concluded the Auction on February 25, 2010,

and it appearing that Buyer's bid represented the highest or otherwise best offer received by the

Debtors for the Assets to be sold and that the Back-Up APA represented the next-highest or

otherwise best offer received by the Debtors for the Assets to be sold; and the Court having

considered the Motion, any other papers filed with the Court relating thereto, any opposition

thereto, and any evidence submitted in connection with any of the foregoing; and the Court

having further considered the arguments of counsel on the Motion, if any, at the Sale Hearing

held on March 1, 2010; and the Court having found that (a) the Court has jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C.

§ 157(b), and (c) notice of the Motion and proposed form of order was served on the requisite

parties entitled to Notice, such notice was sufficient under the circumstances, and no further

notice need be given; and the Court having determined that a sound business purpose exists to

grant the relief contained herein and that the legal and factual bases set forth in the Motion

Page (4)

| | |
|---|---|
| Debtor: | North Country BBQ Ventures, Inc. *et al.* |
| Case No. | 09-44194 (MS) |
| Caption of Order: | Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I) Authorizing Sale of Certain Assets of the Debtor Free and Clear of All Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement, (II) Approving the Asset Purchase Agreements, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules 6004(h) and 6006(d) |

---

establish just cause for the relief granted herein and for waiver of the fourteen-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d); and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors and their estates; and after due deliberation and sufficient cause appearing therefor;

THE COURT HEREBY FINDS AND DETERMINES THAT:[3]

A.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(A), (N) and (O). Venue of the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 363, and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006 and 9014.

B.      This Sale Order constitutes a final order within the meaning of 28 U.S.C. §158(a). To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

---

[3]      Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052. Any statements of this Court from the bench at the Sale Hearing shall constitute additional findings of fact and conclusions of law as appropriate and are expressly incorporated by reference in this Sale Order.

Page (5)
Debtor:              North Country BBQ Ventures, Inc. *et al.*
Case No.             09-44194 (MS)
Caption of Order:    Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I)
Authorizing Sale of Certain Assets of the Debtor Free and Clear of All
Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement,
(II) Approving the Asset Purchase Agreements, (III) Authorizing and
Approving the Assumption and Assignment of Certain Executory
Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules
6004(h) and 6006(d)

---

C.      The Procedures Order was entered on January 8, 2010, as amended by Order

dated January 13, 2010, under which, among other things, this Court approved certain notice and

bidding procedures for the Sale Hearing.    The Procedures Order provided that it was

immediately effective upon entry, and such Order is a final and non-appealable order and

remains in full force and effect.

D.      As evidenced by the certificates of service filed with the Court and based on the

representations of counsel at the Sale Hearing: (i) proper, timely, adequate and sufficient notice

of the Motion and the Sale Hearing has been provided in accordance with sections 363 and 365

of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014 and the

Procedures Order, including, without limitation, to taxing authorities in all jurisdictions where

any of the Assets are located; (ii) the Debtors provided due and proper notice of the sale, and

assumption and assignment of each contract and lease (and related Cure Amounts, if any) listed

in the Assumption and Assignment Notice to each non-debtor party to such contract or lease; (iii)

such notice was good, sufficient and appropriate under the particular circumstances; and (iv) no

other or further notice of the Motion, the Sale Hearing, the assumption and assignment of the

Debtors' contracts and leases under the APA (or the Back-Up APA, if applicable), or the entry of

this Order shall be required.

Page (6)
Debtor:           North Country BBQ Ventures, Inc. *et al.*
Case No.          09-44194 (MS)
Caption of Order: Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I)
Authorizing Sale of Certain Assets of the Debtor Free and Clear of All
Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement,
(II) Approving the Asset Purchase Agreements, (III) Authorizing and
Approving the Assumption and Assignment of Certain Executory
Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules
6004(h) and 6006(d)

---

E.     A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities as outlined in the Sale Motion and the Procedures Order.

F.     As demonstrated by (i) the testimony and/or other evidence proffered or adduced at the Sale Hearing, (ii) the representations of counsel made on the record at the Sale Hearing, and (iii) the record of this case and all prior proceedings in this case held before the Court, the Debtors have (a) marketed the Assets and conducted the sale process in compliance with the Procedures Order; (b) afforded interested potential purchasers a full, fair and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offers to acquire the Assets and the Subject Contracts; (c) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Assets and the Subject Contracts; and (d) adequately and appropriately marketed the Assets and the Subject Contracts through, inter alia, the dissemination of information regarding the Assets and the Subject Contracts to interested purchasers.

G.     Debtors, together with their retained professionals, Crowell & Moring LLP, Brookwood Associates, LLC, and Post, Polak, Goodsell, MacNeill & Strauchler, P.A. (collectively, the "Professionals") and Wells Fargo Bank, N.A. as agent for certain lenders ("Wells Fargo"), as well as its professionals, Sidley Austin LLP and McCarter & English LLP ("Wells' Counsel"), have conducted themselves throughout the sale process reasonably and in

Page (7)
Debtor:                 North Country BBQ Ventures, Inc. *et al.*
Case No.                09-44194 (MS)
Caption of Order:       Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I)
                        Authorizing Sale of Certain Assets of the Debtor Free and Clear of All
                        Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement,
                        (II) Approving the Asset Purchase Agreements, (III) Authorizing and
                        Approving the Assumption and Assignment of Certain Executory
                        Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules
                        6004(h) and 6006(d)

---

good faith, and all decisions made with respect to the qualification of bidders, evaluation of

offers, determination of the highest or otherwise best bid for the Assets, selection of Famous

Dave's of America, Inc. as the Back-Up Bidder, and selection of RRGK, LLC as the entity

offering the next highest or otherwise best bid for the Assets after the Buyer (the "Back-Up

Bidder") were good, proper and authorized by the Procedures Order and in accordance with the

Auction Procedures adopted by the Procedures Order.

    H.       Prior to the Auction, Debtors, in consultation with their Professionals and Wells

Fargo and in accordance with the Auction Procedures, qualified four potential purchasers for

continuing with the sales process, including Buyer, Back-Up Bidder, DP North Country BBQ,

LLC, and Wells Fargo. Debtors' determination, in consultation with Wells Fargo, that all four

potential purchasers had submitted or were deemed to have submitted a Qualified Bid, as

required to participate in the Auction, was fully authorized by and in accordance with the

Auction Procedures.

    I.       Buyer's bid for the purchase of the Assets, as memorialized in the APA, is the

highest or otherwise best offer received for the Assets to be sold. The Back-Up Bidder's bid for

the purchase of the Assets, as memorialized in the Back-Up APA, is the next highest or

otherwise best offer received for the Assets to be sold. The purchase price to be paid by Buyer

pursuant to the APA (or the Back-Up Bidder pursuant to the Back-Up APA, if applicable) is fair

Page (8)
Debtor:               North Country BBQ Ventures, Inc. *et al.*
Case No.              09-44194 (MS)
Caption of Order:     Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I)
                      Authorizing Sale of Certain Assets of the Debtor Free and Clear of All
                      Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement,
                      (II) Approving the Asset Purchase Agreements, (III) Authorizing and
                      Approving the Assumption and Assignment of Certain Executory
                      Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules
                      6004(h) and 6006(d)

---

and constitutes reasonably equivalent value for the Assets, as determined by the auction process, and is in the best interests of the Debtors, their creditors and their estates.

J.      On February 24, 2010, the Debtors conducted the Auction in accordance with the Procedures Order entered by the Court, and, as permitted by the Auction Procedures adopted by the Procedures Order, adjourned the Auction to February 25, 2010 for the sole purpose of permitting the Debtors, in consultation with their Professionals and Wells Fargo, to determine the highest or otherwise best offer for the Assets. The Auction afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer than that reflected in the APA (or the Back-Up APA, if applicable). Each Qualified Bidder was given the opportunity before the formal adjournment of the Auction to submit its highest or otherwise best bid and was sufficiently informed that no further or additional terms would be considered thereafter. Upon conclusion of the Auction, the Debtors' determination that the APA constituted the highest and best offer for the Assets and the Subject Contracts and that the Back-Up APA constituted the next highest and best offer for the Assets and the Subject Contracts constitutes a valid, sound and good faith exercise of the Debtors' business judgment in consultation with their Professionals and Wells Fargo.

K.      In accordance with the Auction Procedures, the Debtors properly informed bidders, creditors, and other parties in interest of the results of the Auction through filing of the Supplement on February 25, 2010.

Page (9)
Debtor:              North Country BBQ Ventures, Inc. *et al.*
Case No.             09-44194 (MS)
Caption of Order:    Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I)
                     Authorizing Sale of Certain Assets of the Debtor Free and Clear of All
                     Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement,
                     (II) Approving the Asset Purchase Agreements, (III) Authorizing and
                     Approving the Assumption and Assignment of Certain Executory
                     Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules
                     6004(h) and 6006(d)

---

L.       The Debtor has articulated compelling circumstances and sound business reasons

for consummating the APA (or the Back-Up APA, if applicable) and for selling the Assets

outside a plan of reorganization, and it is a reasonable exercise of the Debtors' business

judgment to consummate the transactions contemplated by the APA (or the Back-Up APA, if

applicable) and such actions are in the best interests of the Debtors, their creditors, and their

estates.

M.       The Debtors are the sole and lawful owners of the Purchased Assets, the Debtors

have full power and authority to execute the APA (or the Back-Up APA, if applicable) and all

other documents contemplated thereby, and the sale of the Assets and the Assigned Contracts by

the Debtors have been duly and validly authorized by all necessary action of the Debtors.  No

consents or approvals other than those provided for in the APA (or the Back-Up APA, if

applicable) are required for the Debtors to consummate the transactions described therein.

Accordingly, the transfer of the Assets and Assigned Contracts identified in the APA (or the

Back-Up APA, if applicable) to Buyer (or the Back-Up Bidder, if applicable) is or will be a

legal, valid and effective transfer of the Assets and Assigned Contracts, and will vest Buyer (or

the Back-Up Bidder, if applicable) with all right, title and interest in and to the Assets and

Assigned Contracts, free and clear of all Liens and Claims (collectively defined below) and

Interests (defined below) pursuant to, and to the fullest extent permitted by, section 363(f) of the

Bankruptcy Code and all other applicable laws, except with respect to those explicitly and

Page (10)

| | |
|---|---|
| Debtor: | North Country BBQ Ventures, Inc. *et al.* |
| Case No. | 09-44194 (MS) |
| Caption of Order: | Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I) Authorizing Sale of Certain Assets of the Debtor Free and Clear of All Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement, (II) Approving the Asset Purchase Agreements, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules 6004(h) and 6006(d) |

expressly assumed by Buyer (or the Back-Up Bidder, if applicable) in the APA (or the Back-Up

APA, if applicable). Such Liens and Claims and Interests shall attach to the proceeds of the Sale

with the same priority, validity, force and effect as they existed before the Closing Date.

N.      The Debtors may sell the Assets and the Assigned Contracts to Buyer (or the

Back-Up Bidder, if applicable) free and clear of all Liens and Claims and Interests in accordance

with, and to the extent permitted by, section 363(f) of the Bankruptcy Code and except as set

forth in the APA (or the Back-Up APA, if applicable). Such Liens and Claims and Interests shall

attach to the proceeds of the Sale with the same priority, validity, force and effect as they existed

before the Closing Date. As a condition of purchasing the Assets, Buyer (or the Back-Up

Bidder, if applicable) requires that the Assets be sold free and clear of all Liens and Claims and

Interests, except those explicitly and expressly assumed by Buyer (or the Back-Up Bidder, if

applicable) in the APA (or the Back-Up APA, if applicable). Except as otherwise set forth in the

APA (or the Back-Up APA, if applicable) or in this Order, the transfer of the Assets to Buyer (or

the Back-Up Bidder, if applicable) does not and will not subject Buyer (or the Back-Up Bidder,

if applicable) to any liability whatsoever with respect to the operation of the Debtors' business

and/or the ownership of the Assets prior to the Closing.

O.      Buyer (or the Back-Up Bidder, if applicable) is a purchaser in good faith, as that

term is used in section 363(m) of the Bankruptcy Code, with respect to the Assets and Assigned

Contracts. The APA and the Back-Up APA were negotiated, proposed and entered into by the

Page (11)
Debtor:                North Country BBQ Ventures, Inc. *et al.*
Case No.               09-44194 (MS)
Caption of Order:      Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I)
                       Authorizing Sale of Certain Assets of the Debtor Free and Clear of All
                       Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement,
                       (II) Approving the Asset Purchase Agreements, (III) Authorizing and
                       Approving the Assumption and Assignment of Certain Executory
                       Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules
                       6004(h) and 6006(d)

---

parties in good faith, from arms'-length bargaining positions and without collusion or fraud of

any kind and, therefore, Buyer (or the Back-Up Bidder, if applicable) is entitled to the

protections of sections 363(m) and 363(n) of the Bankruptcy Code with respect to the Assets and

Assigned Contracts. Neither the Debtors nor Buyer (or the Back-Up Bidder, if applicable) have

engaged in any conduct that would cause or permit the APA (or the Back-Up APA, if applicable)

to be voided, or for the imposition of costs and damages, under section 363(n) of the Bankruptcy

Code.

      P.     At the Closing under the APA (or the Back-Up APA, if applicable), the Debtors

may assume each contract and lease included as a Purchased Asset in Section 2.1(b) of the APA

(or the Back-Up APA, if applicable) and/or listed on Schedule 2.1(b) of the APA (or the Back-

Up APA, if applicable), as such Schedule 2.1(b) has been amended, and assign each of them to

the Buyer (or the Back-Up Bidder, if applicable) or its designee pursuant to sections 363 and 365

of the Bankruptcy Code and this Order notwithstanding any anti-assignment clause or other

similar provision in the relevant Assigned Contract, as provided by section 365(f) of the

Bankruptcy Code. The assumption and assignment of these Assigned Contracts is in the best

interests of the Debtors and their estates, creditors and other parties in interest, representing the

reasonable exercise of sound and prudent business judgment by the Debtors. The Buyer, the

Back-Up Bidder and the Debtors have provided evidence of adequate assurance of future

performance by the Buyer (or the Back-Up Bidder, if applicable) under the Assigned Contracts.

Page (12)
Debtor:             North Country BBQ Ventures, Inc. *et al.*
Case No.            09-44194 (MS)
Caption of Order:   Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I)
Authorizing Sale of Certain Assets of the Debtor Free and Clear of All
Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement,
(II) Approving the Asset Purchase Agreements, (III) Authorizing and
Approving the Assumption and Assignment of Certain Executory
Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules
6004(h) and 6006(d)

---

Q.      The Buyer (or the Back-Up Bidder, if applicable): (i) has cured, or has provided

adequate assurance of cure, of any default existing prior to the date hereof under any of the

Assigned Contracts, within the meaning of Bankruptcy Code section 365(b)(I)(A), and (ii) has

provided compensation or adequate assurance of compensation to any party for any actual

pecuniary loss to such party resulting from a default prior to the date hereof under any of the

Assigned Contracts, within the meaning of Bankruptcy Code section 365(b)(I)(B).

R.      Except as noted herein, the cure amounts, if any, set forth in the Amended

Assumption and Assignment Notice with respect to each Assigned Contract (collectively, the

"Cure Amounts") are the sole amounts necessary under sections 365(b)(l)(A) and (B) and

365(f)(2)(A) of the Bankruptcy Code to cure all defaults and pay all actual pecuniary losses

under the Assigned Contracts. The Cure Amounts for each of the Assigned Contracts shall be

paid in accordance with the method set forth in Article 3 of the APA (or the Back-Up APA, if

applicable).

S.      Non-debtor parties holding valid Liens and Claims or Interests in or with respect

to the Assets and Assigned Contracts who did not object, or who have withdrawn their

objections, to the Motion are deemed to have consented to the sale of the Assets and Assigned

Contracts free and clear of their Liens and Claims or Interests in or with respect to the Assets and

Assigned Contracts pursuant to section 363(f)(2) and 365 of the Bankruptcy Code.  Any non-

debtor party that has objected to the Motion and/or the Cure Exhibit is deemed to be limited in its

Debtor:              North Country BBQ Ventures, Inc. *et al.*
Case No.             09-44194 (MS)
Caption of Order:    Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I)
Authorizing Sale of Certain Assets of the Debtor Free and Clear of All
Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement,
(II) Approving the Asset Purchase Agreements, (III) Authorizing and
Approving the Assumption and Assignment of Certain Executory
Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules
6004(h) and 6006(d)

---

objection to the bases articulated in such objection, and all objections to the Motion and/or Cure

Exhibit not otherwise withdrawn are by this Order overruled. Accordingly, all non-Debtor

parties having Liens and Claims and Interests against or in any of the Assets and the Assigned

Contracts shall be forever barred, estopped and permanently enjoined from pursuing or asserting

such Liens and Claims and Interests in or against the Assets and the Assigned Contracts, the

Buyer (or the Back-Up Bidder, if applicable) or any of its assets, property, successors or assigns.

As noted above, such Liens and Claims and Interests shall attach to the proceeds of the Sale with

the same priority, validity, force and effect as they existed before the Closing Date.

T.      The Buyer (or the Back-Up Bidder, if applicable) is assuming only the Assumed

Liabilities, as defined and set forth in the APA (or the Back-Up APA, if applicable), and is not

assuming any obligations other than the Assumed Liabilities.

U.      The Debtors are assuming, assigning, and selling to the Buyer (or the Back-Up

Bidder, if applicable) only the Assigned Contracts in accordance with the terms of the APA (or

the Back-Up APA, if applicable) and are not assuming, assigning, or selling any executory

contracts or unexpired leases other than the Assigned Contracts in connection with the Sale

Motion and this Order.

V.      The conditions of section 363(f) of the Bankruptcy Code have been satisfied in

full. The transfer of the Assets and the Assigned Contracts to the Buyer (or the Back-Up Bidder,

if applicable) shall be a legal, valid and effective transfer of the Assets and the Assigned

Page (14)
Debtor:              North Country BBQ Ventures, Inc. *et al.*
Case No.             09-44194 (MS)
Caption of Order:    Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I)
                     Authorizing Sale of Certain Assets of the Debtor Free and Clear of All
                     Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement,
                     (II) Approving the Asset Purchase Agreements, (III) Authorizing and
                     Approving the Assumption and Assignment of Certain Executory
                     Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules
                     6004(h) and 6006(d)

---

Contracts and, except for the Assumed Liabilities, shall vest the Buyer (or the Back-Up Bidder,

if applicable) at Closing with all right, title and interest of the Debtors in and to the Assets and

the Assigned Contracts, free and clear of all Liens and Claims, encumbrances and all other

interests (collectively including each of the foregoing, "Interests"), including, but not limited to:

(1) those that purport to give to any party a right or option to effect any forfeiture, modification,

right of first refusal or termination of the Debtors' interest in the Assets and the Assigned

Contracts or any similar rights, including rights under section 365(h) of the Bankruptcy Code;

(2) those relating to taxes arising under or out of in connection with, or in any way relating to the

operation of the Assets and the Assigned Contracts prior to the Closing; and (3) (a) those arising

under all mortgages, deeds of trust, security interests, conditional sale or other title retention

agreements, pledges, judgments, demands, encumbrances, rights of first refusal or charges of any

kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer,

receipt of income or other exercise of any attributes of ownership, and (b) all debts arising in any

way in connection with any agreements, acts or failures to act of any of the Debtors or any of the

Debtors' predecessors or affiliates, Liens and Claims, obligations, liabilities, demands,

guaranties, options, rights, contractual or other commitments, restrictions, interests and matters

of any kind and nature, whether known or unknown, contingent or otherwise, whether arising

prior to or subsequent to the commencement of this bankruptcy case, and whether imposed by

agreement, understanding, law, equity or otherwise, including, but not limited to, claims

Page (15)
Debtor:              North Country BBQ Ventures, Inc. *et al.*
Case No.             09-44194 (MS)
Caption of Order:    Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I)
                     Authorizing Sale of Certain Assets of the Debtor Free and Clear of All
                     Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement,
                     (II) Approving the Asset Purchase Agreements, (III) Authorizing and
                     Approving the Assumption and Assignment of Certain Executory
                     Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules
                     6004(h) and 6006(d)

---

otherwise arising under doctrines of successor liability to the greatest extent permitted by applicable law. As noted above, such Liens and Claims and Interests shall attach to the proceeds of the Sale with the same priority, validity, force and effect as they existed before the Closing Date.

W.      Given that creditors and other parties-in-interest have been given notice of the Sale of the Assets in these chapter 11 cases, as well as an opportunity to be heard before this Court, the application of state and local bulk transfer laws and other similar requirements are unnecessary.

X.      Time is of the essence in consummating the Sale. In order to maximize the value of the Assets, it is essential that the Sale occur promptly, and within the time constraints set forth in the APA (or the Back-Up APA, if applicable) and Procedures Order, as applicable. Accordingly, there is cause to waive the stays contemplated by Bankruptcy Rules 6004 and 6006.

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1.      All objections to the Motion and the relief requested therein that have not been withdrawn, waived or settled, and all reservations of rights included in such objections, are hereby overruled on the merits and denied.

2.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are hereby authorized to sell and transfer the Assets to Buyer (or the Back-Up Bidder, if applicable)

Debtor:              North Country BBQ Ventures, Inc. *et al.*

Case No.             09-44194 (MS)

Caption of Order:    Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I)
Authorizing Sale of Certain Assets of the Debtor Free and Clear of All
Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement,
(II) Approving the Asset Purchase Agreements, (III) Authorizing and
Approving the Assumption and Assignment of Certain Executory
Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules
6004(h) and 6006(d)

---

pursuant to and in accordance with the terms and conditions of the APA (or the Back-Up APA, if

applicable) and to take all other actions as are necessary to effectuate all of the terms thereof and

to consummate the transactions contemplated therein, including, without limitation, such actions

as are necessary to execute and deliver all documents referenced in and/or contemplated under

the APA (or the Back-Up APA, if applicable) without any further authorization of the Court.

  3.  Title to the Assets shall pass to Buyer (or the Back-Up Bidder, if applicable) at

Closing pursuant to, and to the fullest extent permitted by, section 363(f) of the Bankruptcy Code

and all other applicable laws, except with respect to those Liens and Claims explicitly and

expressly assumed by Buyer (or the Back-Up Bidder, if applicable) in the APA (or the Back-Up

APA, if applicable), free and clear of any and all liens (including mechanics', materialmen's and

other consensual and non-consensual liens and statutory liens), security interests, encumbrances

and claims (including, but not limited to, any "claim" as defined in section 101(5) of the

Bankruptcy Code), reclamation claims, mortgages, deeds of trust, pledges, covenants,

restrictions, hypothecations, charges, indentures, loan agreements, instruments, contracts, leases,

licenses, options, rights of first refusal, asserted rights of consent, offsets, recoupment, rights of

recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity,

claims for reimbursement, contribution, indemnity or exoneration, assignment, preferences,

debts, charges, suits, rights of recovery, interests, products liability, alter-ego, environmental,

successor liability, tax and other liabilities, causes of action and claims, and in each case whether

Page (17)
Debtor:               North Country BBQ Ventures, Inc. *et al.*
Case No.              09-44194 (MS)
Caption of Order:     Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I)
                      Authorizing Sale of Certain Assets of the Debtor Free and Clear of All
                      Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement,
                      (II) Approving the Asset Purchase Agreements, (III) Authorizing and
                      Approving the Assumption and Assignment of Certain Executory
                      Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules
                      6004(h) and 6006(d)

---

secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or

unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent

or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material,

disputed or undisputed, known or unknown, whether arising prior to, on, or subsequent to the

Petition Date, whether imposed by agreement, understanding, law, equity or otherwise

(collectively, the "Liens and Claims"), with any Liens and Claims to attach only to the proceeds

of sale with the same priority, validity, force and effect as they existed before the Closing Date.

4.    In accordance with the DIP Credit Agreement, approved by interim and final

orders of this Court, the Debtors are authorized to pay all outstanding DIP Obligations (as

defined in the DIP Credit Agreement), if any, upon consummation of the Sale.

5.    Except as expressly permitted otherwise by this Sale Order, all persons and

entities, including, but not limited to, all debt security holders; equity security holders;

governmental, tax and regulatory authorities; lenders; trade creditors; and other creditors holding

Liens and Claims or Interests of any kind or nature whatsoever against or in the Debtors or the

Assets or the Assigned Contracts (whether legal or equitable, secured or unsecured, matured or

unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in

connection with or in any way relating to the Debtors, the Assets, the Assigned Contracts, the

operation of the Assets prior to the Closing or the transactions are forever barred, estopped and

permanently enjoined from asserting against the Buyer (or the Back-Up Bidder, if applicable), its

Page (18)
Debtor:              North Country BBQ Ventures, Inc. *et al.*
Case No.             09-44194 (MS)
Caption of Order:    Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I)
                     Authorizing Sale of Certain Assets of the Debtor Free and Clear of All
                     Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement,
                     (II) Approving the Asset Purchase Agreements, (III) Authorizing and
                     Approving the Assumption and Assignment of Certain Executory
                     Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules
                     6004(h) and 6006(d)

---

successors or assigns, their property or the Assets such persons' or entities' Liens and Claims or

Interests. This Sale Order is and shall be effective as a determination that all Liens and Claims

and Interests shall be and are, without further action by any person or entity, released with

respect to the Assets and the Assigned Contracts as of the Closing.

      6.      Pursuant to section 365(b), (c) and (f) of the Bankruptcy Code and subject to and

conditioned upon the Closing of the Sale, the Debtors are authorized to assume and assign the

Assigned Contracts free and clear of all Interests, Liens and Claims and encumbrances of any

kind or nature whatsoever, except as provided in the APA (or the Back-Up APA, if applicable),

and, subject further to the procedures established in the Procedures Order; provided, however,

that there shall be no assumption of any such Assigned Contract absent simultaneous assignment

thereof to Buyer (or the Back-Up Bidder, if applicable). As noted above, such Liens and Claims

and Interests shall attach to the proceeds of the Sale with the same priority, validity, force and

effect as they existed before the Closing Date. The Debtors are further authorized to execute and

deliver to the Buyer (or the Back-Up Bidder, if applicable) such agreements, documents or other

instruments as may be necessary to sell, assign, transfer, convey and deliver the Assigned

Contracts to the Buyer (or the Back-Up Bidder, if applicable).

      7.      On or as promptly after the Closing Date as practical, the Cure Amounts with

respect to Assigned Contracts identified for assignment in the APA (or the Back-Up APA, if

Debtor:            North Country BBQ Ventures, Inc. *et al.*
Case No.           09-44194 (MS)
Caption of Order:  Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I)
                   Authorizing Sale of Certain Assets of the Debtor Free and Clear of All
                   Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement,
                   (II) Approving the Asset Purchase Agreements, (III) Authorizing and
                   Approving the Assumption and Assignment of Certain Executory
                   Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules
                   6004(h) and 6006(d)

---

applicable) shall be paid or otherwise satisfied in accordance with the terms of the APA (or the

Back-Up APA, if applicable).

8.      As to any counterparties to Assigned Contracts who filed timely objections to the

Notice of Assumption and Assignment, but who did not dispute the applicable Cure Amounts,

because this Court has already found that such parties have received adequate assurance of

performance on the basis of the record in this case and the evidence and argument offered at the

Sale Hearing, no further cure beyond the adequate assurance provided is due to such objecting

counterparties.

9.      The Buyer (or the Back-Up Bidder, if applicable) shall have the right until the

Closing Date, or at such later time as mutually agreed upon between the Debtors, Buyer (or the

Back-Up Bidder, if applicable) and applicable non-debtor party, to amend the list of Assigned

Contracts designated for assumption and assignment under the APA (or the Back-Up APA, if

applicable) (a) to designate any such executory contract or unexpired lease for assumption and

assignment to Buyer (or the Back-Up Bidder, if applicable) that, as of such date, has not been

designated as an Assigned Contract and has not been rejected by the Debtors or otherwise

terminated; and (b) to remove any such executory contract or unexpired lease from the list of

Assigned Contracts to be assumed and assigned, including, without limitation, in such instances

where the parties cannot reach agreement on a disputed Cure Amount.

Page (20)

Debtor:                    North Country BBQ Ventures, Inc. *et al.*

Case No.                   09-44194 (MS)

Caption of Order:          Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I)
                           Authorizing Sale of Certain Assets of the Debtor Free and Clear of All
                           Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement,
                           (II) Approving the Asset Purchase Agreements, (III) Authorizing and
                           Approving the Assumption and Assignment of Certain Executory
                           Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules
                           6004(h) and 6006(d)

---

10.     Payment of the Cure Amounts, where required, shall: (i) be deemed to discharge the Debtors' obligation to cure, or provide adequate assurance that the Debtors will promptly cure, any defaults under the applicable Assigned Contracts; (ii) compensate, or provide adequate assurance that the Debtors will promptly compensate, any non-debtor party to the applicable Assigned Contracts for any actual pecuniary loss resulting from any default under the Assigned Contracts; (iii) constitute satisfaction in full of all amounts accrued as of the Closing; and (iv) together with the assumption and purchase of the applicable Assigned Contracts by the Buyer (or the Back-Up Bidder, if applicable), constitute adequate assurance of future performance thereof. Pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall have no liabilities for any claims arising or relating to or accruing post-Closing under any of the Assigned Contracts.

11.     In accordance with sections 365(b)(2) and (f) of the Bankruptcy Code, upon transfer of such Assigned Contracts to Buyer (or the Back-Up Bidder, if applicable), (i) Buyer (or the Back-Up Bidder, if applicable) shall have all of the rights of the Debtor thereunder and each provision of such Assigned Contracts shall remain in full force and effect for the benefit of Buyer (or the Back-Up Bidder, if applicable) notwithstanding any provision in any such Assigned Contract or in applicable law that prohibits, restricts or limits in any way such assignment or transfer, and (ii) no Assigned Contract may be terminated, or the rights of any party modified in any respect, including pursuant to any "change of control" clause, by any other

Page (21)
Debtor:              North Country BBQ Ventures, Inc. *et al.*
Case No.             09-44194 (MS)
Caption of Order:    Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I)
                     Authorizing Sale of Certain Assets of the Debtor Free and Clear of All
                     Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement,
                     (II) Approving the Asset Purchase Agreements, (III) Authorizing and
                     Approving the Assumption and Assignment of Certain Executory
                     Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules
                     6004(h) and 6006(d)

---

party thereto as a result of the consummation of the transactions contemplated by the APA (or

the Back-Up APA, if applicable).

12.    All defaults or other obligations of the Debtors under any Assigned Contract

arising or accruing prior to the date of this Sale Order (without giving effect to any acceleration

clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy

Code) shall be deemed cured upon either payment at the Closing of the Sale or as soon thereafter

as practicable of the Cure Amounts, if any, with respect to each Subject Contract, or such other

adequate assurance of future performance as necessary.

13.    Except as to the obligation to pay the Cure Amounts, if any, each non-debtor

party to an Assigned Contract hereby is forever barred, estopped, and permanently enjoined from

asserting against the Debtors or the Buyer (or the Back-Up Bidder, if applicable), or the property

of any of them, any default existing as of the date of the entry of this Order, whether declared or

undeclared or known or unknown; or, against the Buyer (or the Back-Up Bidder, if applicable),

any counterclaim, defense, setoff or any other claim asserted or assertable against the Debtors.

14.    The failure of the Debtors or the Buyer (or the Back-Up Bidder, if applicable) to

enforce at any time one or more terms or conditions of any Assigned Contract shall not be a

waiver of such terms or conditions, or of the Buyer's (or the Back-Up Bidder's, if applicable)

rights to enforce every term and condition of the Assigned Contract.

Page (22)
Debtor:            North Country BBQ Ventures, Inc. *et al.*
Case No.           09-44194 (MS)
Caption of Order:  Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I)
                   Authorizing Sale of Certain Assets of the Debtor Free and Clear of All
                   Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement,
                   (II) Approving the Asset Purchase Agreements, (III) Authorizing and
                   Approving the Assumption and Assignment of Certain Executory
                   Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules
                   6004(h) and 6006(d)

---

15.     Any provisions in any Assigned Contract that prohibit or condition the assignment of any Assigned Contract or allow the non-debtor party to such Assigned Contract to terminate, recapture, impose any penalty, condition a renewal or extension, or modify or limit any term or condition upon the assignment of such Assigned Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer (or the Back-Up Bidder, if applicable) of the Assigned Contracts have been satisfied and all counterparties to such Assigned Contracts shall be deemed to have consented to the assignment to Buyer (or the Back-Up Bidder, if applicable) as contemplated by Bankruptcy Code section 365(c). Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer (or the Back-Up Bidder, if applicable) shall be fully and irrevocably vested with all rights, title, privilege and interest of the relevant Debtors under the applicable Assigned Contract.

16.     Upon the payment of the Cure Amounts, if any, the Buyer (or the Back-Up Bidder, if applicable) shall have assumed the Assigned Contracts and, pursuant to sections 363, 365(f), and 365(k) of the Bankruptcy Code, the assignment and sale by the Debtors of such Assigned Contracts shall not be a default thereunder. After the payment of the relevant Cure Amounts, if any, neither the Debtors nor the Buyer (nor the Back-Up Bidder, if applicable) shall have any further obligations to the non-Debtor parties to the Assigned Contracts other than the

Debtor:                North Country BBQ Ventures, Inc. *et al.*
Case No.               09-44194 (MS)
Caption of Order:      Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I)
Authorizing Sale of Certain Assets of the Debtor Free and Clear of All
Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement,
(II) Approving the Asset Purchase Agreements, (III) Authorizing and
Approving the Assumption and Assignment of Certain Executory
Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules
6004(h) and 6006(d)

---

Buyer's (or the Back-Up Bidder's, if applicable) obligations under the Assigned Contracts that accrue on or after the Closing, or otherwise pursuant to the Assumed Liabilities.

17.     Upon the Closing on the Sale and the payment of the relevant Cure Amounts by the Buyer (or the Back-Up Bidder, if applicable), if any, the Buyer (or the Back-Up Bidder, if applicable) shall be deemed to be substituted for the Debtors as a party to the applicable Assigned Contracts, and the Debtors shall be relieved from all liability on such Assigned Contracts arising after the Closing.

18.     The Buyer (or the Back-Up Bidder, if applicable) has provided adequate assurance of its future performance under the relevant Assigned Contract within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable), and 365(f)(2)(B) of the Bankruptcy Code.

19.     There shall be no rent accelerations, assignment fees, increases (including advertising rates), or any other fees charged to the Buyer (or the Back-Up Bidder, if applicable) as a result of the assumption, assignment, and sale of the Assigned Contracts.

20.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all parties to the Assigned Contracts are forever barred and enjoined from raising or asserting against the Buyer (or the Back-Up Bidder, if applicable) or the Assets any assignment fee, default, breach, or claim or pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts existing as of the Closing Date or arising by reason of the Closing, except for any post-

Page (24)
Debtor:             North Country BBQ Ventures, Inc. *et al.*
Case No.            09-44194 (MS)
Caption of Order:   Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I)
                    Authorizing Sale of Certain Assets of the Debtor Free and Clear of All
                    Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement,
                    (II) Approving the Asset Purchase Agreements, (III) Authorizing and
                    Approving the Assumption and Assignment of Certain Executory
                    Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules
                    6004(h) and 6006(d)

---

petition amounts that are Assumed Liabilities being assumed by the Buyer (or the Back-Up

Bidder, if applicable) under the APA (or the Back-Up APA, if applicable).

21.    The sale and transfer of the Assets to Buyer (or the Back-Up Bidder, if

applicable) pursuant to the APA (or the Back-Up APA, if applicable) constitutes a legal, valid

and effective transfer and shall vest Buyer (or the Back-Up Bidder, if applicable) with all right,

title and interest of the Debtors in and to the Assets.

22.    This Order and the APA (or the Back-Up APA, if applicable) shall be binding

upon, and shall inure to the benefit of, the Debtors, the Debtors' estates and the Debtors'

creditors, Buyer (or the Back-Up Bidder, if applicable) and its affiliates and their respective

successors and assigns, and any affected third parties and persons or entities asserting a claim

against or interest in or lien on the Debtors' estates or any of the Assets or the Assigned

Contracts to be sold to the Buyer (or the Back-Up Bidder, if applicable) pursuant to the APA (or

the Back-Up APA, if applicable), which shall not be subject to rejection, notwithstanding any

subsequent appointment of any trustee for any of the Debtors under any chapter of the

Bankruptcy Code, as to which trustee such terms and provisions likewise shall be binding in all

respects.

23.    This Court shall retain exclusive jurisdiction to (i) enforce the provisions of this

Order and the APA (or the Back-Up APA, if applicable), and any amendments thereto, and of

each of the agreements executed in connection therewith, (ii) compel delivery of the Assets or

Page (25)
Debtor:                North Country BBQ Ventures, Inc. *et al.*
Case No.               09-44194 (MS)
Caption of Order:      Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I)
                       Authorizing Sale of Certain Assets of the Debtor Free and Clear of All
                       Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement,
                       (II) Approving the Asset Purchase Agreements, (III) Authorizing and
                       Approving the Assumption and Assignment of Certain Executory
                       Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules
                       6004(h) and 6006(d)

---

the Assigned Contracts to the Buyer (or the Back-Up Bidder, if applicable), (iii) compel delivery

of the Purchase Consideration; (iv) compel specific performance of the Debtors' and the Buyer's

(or the Back-Up Bidder's, if applicable) obligations under the APA (or the Back-Up APA, if

applicable); and (v) to resolve any issue or dispute concerning the interpretation, implementation

or enforcement of this Order and the APA (or the Back-Up APA, if applicable), or the rights and

duties of the parties hereunder or thereunder, including, without limitation, any issue or dispute

concerning the transfer of the Assets free and clear of Liens and Claims and Interests and the

attachment of any such Liens and Claims and Interests to the proceeds of the Sale.

24.     Upon the Debtors' receipt of the consideration set forth in Section 3.1 of the APA

(or the Back-Up APA, if applicable) at the Closing, each of the creditors of the Debtors is

authorized and directed to execute such documents and take all other actions as may be

necessary to release its Liens and Claims and Interests against or in the Assets, if any, as such

Liens and Claims may have been recorded or may otherwise exist, with the exception of those

creditors holding Liens and Claims explicitly and expressly assumed by Buyer (or the Back-Up

Bidder, if applicable) in the APA (or the Back-Up APA, if applicable).

25.     The automatic stay provisions of section 362 of the Bankruptcy Code are vacated

and modified to the extent necessary to implement the terms and provisions of the APA (or the

Back-Up APA, if applicable) and the provisions of this Sale Order.

Page (26)
Debtor:              North Country BBQ Ventures, Inc. *et al.*
Case No.            09-44194 (MS)
Caption of Order:   Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I)
                    Authorizing Sale of Certain Assets of the Debtor Free and Clear of All
                    Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement,
                    (II) Approving the Asset Purchase Agreements, (III) Authorizing and
                    Approving the Assumption and Assignment of Certain Executory
                    Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules
                    6004(h) and 6006(d)

26.     Each and every federal, state, and local governmental agency, recording office or

department and all other parties, persons or entities is hereby directed to accept this Order for

recordation as conclusive evidence of the free and clear and unencumbered transfer of title to the

Assets conveyed to Buyer (or the Back-Up Bidder, if applicable).

27.     If any person or entity that has filed financing statements, mortgages, mechanic's

liens, *lis pendens*, or other documents or agreements evidencing Liens and Claims against or in

the Assets shall not have delivered to the Debtors before the Closing, in proper form for filing

and executed by the appropriate parties, termination statements, instruments of satisfaction,

releases of all Liens and Claims that the person or entity has with respect to the Assets or

otherwise, the Debtors or Buyer (or the Back-Up Bidder, if applicable) is hereby authorized and

directed to execute and file such statements, instruments, releases and other documents on behalf

of such person or entity with respect to the Assets.

28.     The provisions of this Order shall be self-executing, and neither the Debtors,

Buyer (or the Back-Up Bidder, if applicable) nor any other party shall be required to execute or

file releases, termination statements, assignments, cancellations, consents or other instruments to

effectuate, consummate and/or implement the provisions hereof with respect to such sale;

provided, however, that this paragraph shall not excuse such parties from performing any and all

of their respective obligations under the APA (or the Back-Up APA, if applicable).  Without in

any way limiting the foregoing, Buyer (or the Back-Up Bidder, if applicable) is empowered to

Debtor:              North Country BBQ Ventures, Inc. *et al.*
Case No.             09-44194 (MS)
Caption of Order:    Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I)
                     Authorizing Sale of Certain Assets of the Debtor Free and Clear of All
                     Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement,
                     (II) Approving the Asset Purchase Agreements, (III) Authorizing and
                     Approving the Assumption and Assignment of Certain Executory
                     Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules
                     6004(h) and 6006(d)

execute and file releases, termination statements, assignments, consents, cancellations or other

instruments to effectuate, consummate and/or implement the provisions hereof with respect to

the sale contemplated by the APA (or the Back-Up APA, if applicable). This Sale Order is

deemed to be in recordable form sufficient to be placed in the filing or recording system of each

and every federal, state or local government agency, department or office.

29.    Consummation of the APA (or the Back-Up APA, if applicable) and the

transactions contemplated therein and thereby does not effect a *de facto* merger or consolidation

of the Debtors and Buyer (or the Back-Up Bidder, if applicable), nor does it result in the

continuation of the Debtors' business under Buyer's (or the Back-Up Bidder's, if applicable)

control. Buyer (or the Back-Up Bidder, if applicable) is not the alter ego of, a successor in

interest to, or a continuation of the Debtors, nor is Buyer (or the Back-Up Bidder, if applicable)

otherwise liable for the Debtors' debts and obligations, unless specifically provided for in the

APA (or the Back-Up APA, if applicable) or pursuant to this Order. Except as otherwise

provided in the APA (or the Back-Up APA, if applicable), all persons and entities (and their

respective successors and assigns) including, but not limited to, all debt security holders, equity

security holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors,

holding Liens and Claims (whether legal or equitable, secured or unsecured, matured or

unmatured, contingent or non-contingent, senior or subordinated) against, in or with respect to

the Debtors and/or the Assets arising under or out of, in connection with, or in any way relating

| | |
|---|---|
| Debtor: | North Country BBQ Ventures, Inc. *et al.* |
| Case No. | 09-44194 (MS) |
| Caption of Order: | Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I) Authorizing Sale of Certain Assets of the Debtor Free and Clear of All Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement, (II) Approving the Asset Purchase Agreements, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules 6004(h) and 6006(d) |

---

to, the Debtors, the Assets, the operation of the Debtor's business prior to the Closing, or the

transfer of the Assets to Buyer (or the Back-Up Bidder, if applicable), hereby are forever barred,

estopped, and permanently enjoined from asserting such persons' or entities' Liens and Claims

or Interests against Buyer (or the Back-Up Bidder, if applicable) and/or its affiliates, designees,

assignees, successors, properties, or assets.   Neither Buyer (nor the Back-Up Bidder, if

applicable) nor the Debtors are required to comply with any "bulk sales", "bulk sales tax" or

similar laws relating to the transfer of the Assets.

30.    All entities who are presently, or who as of the Closing may be, in possession of

some or all of the Assets hereby are directed to surrender possession of the Assets to Buyer (or

the Back-Up Bidder, if applicable) as of the Closing.

31.    The Debtors, their Professionals, Wells Fargo, Wells' Counsel, and the respective

managers, officers, directors or employees of each shall not have or incur any liability to any

Person or Entity (each as defined in the Bankruptcy Code) for any action taken or omission in

connection with or related to the Sale, except for acts constituting willful misconduct, gross

negligence, or bad faith, and in all respects such parties shall be entitled to rely upon the advice

of counsel with respect to their duties and responsibilities with respect to the Sale.

32.    Nothing contained in any chapter 11 plan confirmed in these cases or order

confirming any such plan shall conflict with or derogate from the provisions of the APA (or the

Back-Up APA, if applicable) or the terms of this Order.

Page (29)
Debtor:                    North Country BBQ Ventures, Inc. *et al.*
Case No.                   09-44194 (MS)
Caption of Order:          Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I)
                           Authorizing Sale of Certain Assets of the Debtor Free and Clear of All
                           Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement,
                           (II) Approving the Asset Purchase Agreements, (III) Authorizing and
                           Approving the Assumption and Assignment of Certain Executory
                           Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules
                           6004(h) and 6006(d)

---

33.     The APA (or the Back-Up APA, if applicable) is not a *sub rosa* chapter 11 plan

for which approval has been sought without the protections that a disclosure statement would

afford, and is not in violation of creditors' voting rights.

34.     Buyer (or the Back-Up Bidder, if applicable) shall be entitled to the protection of

Section 363(m) of the Bankruptcy Code if this Order or any authorization contained herein is

reversed or modified on appeal.  The purchase by Buyer (or the Back-Up Bidder, if applicable)

of the Assets is a purchase in good faith for fair value within the meaning of section 363(m) of

the Bankruptcy Code and, therefore, Buyer (or the Back-Up Bidder, if applicable) is entitled to

the protection of section 363(m) of the Bankruptcy Code.  Accordingly, the reversal,

modification or appeal of the authorization provided herein to consummate the APA (or the

Back-Up APA, if applicable) and sale of the Assets shall not affect the validity of the sale to

Buyer (or the Back-Up Bidder, if applicable), unless such authorization is duly stayed pending

such appeal before the Closing.

35.     The sale approved by this Order is not subject to avoidance or the imposition of

costs and damages pursuant to Section 363(n) of the Bankruptcy Code. The Purchase

Consideration set forth in Section 3.1 of the APA (or the Back-Up APA, if applicable) to be

provided by Buyer (or the Back-Up Bidder, if applicable) in exchange for the Assets shall be

deemed to constitute reasonably equivalent value and fair consideration.

Page (30)
Debtor:              North Country BBQ Ventures, Inc. *et al.*
Case No.             09-44194 (MS)
Caption of Order:    Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I)
                     Authorizing Sale of Certain Assets of the Debtor Free and Clear of All
                     Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement,
                     (II) Approving the Asset Purchase Agreements, (III) Authorizing and
                     Approving the Assumption and Assignment of Certain Executory
                     Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules
                     6004(h) and 6006(d)

36.     Payment of the Purchase Consideration in accordance with the method set forth in Section 3.1 of the APA shall be deemed to satisfy, not only Debtors' obligations to cure unpaid monetary amounts due the Buyer under the Assigned Contracts, but also be deemed to satisfy Debtors' post-petition obligations to Buyer under franchise agreements with respect to restaurants operated by North Country BBQ Ventures (Hillsborough), LLC and North Country BBQ Ventures (Manchester), LLC.

37.     Upon payment of the Purchase Consideration in accordance with Section 3.1 of the APA, Debtors shall be deemed to have satisfied in full any claims Buyer may hold against such entities arising on or before the Closing Date (except any claims solely arising from and in connection with the APA), and Buyer agrees that it will not file or otherwise assert in the Bankruptcy Cases (i) any claims against the Sellers (including Woodbridge, if Purchaser does not elect to treat the Woodbridge Location as an Excluded Restaurant) and (ii) any claims arising on or before the Closing Date against Manchester and Hillsborough (and Woodbridge, if the Woodbridge Location is or becomes an Excluded Restaurant).

38.     Subject to prior written consent of Wells Fargo, the APA (or the Back-Up APA, if applicable) and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of this Court, provided that any such

Debtor:            North Country BBQ Ventures, Inc. *et al.*
Case No.           09-44194 (MS)
Caption of Order:  Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I)
                   Authorizing Sale of Certain Assets of the Debtor Free and Clear of All
                   Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement,
                   (II) Approving the Asset Purchase Agreements, (III) Authorizing and
                   Approving the Assumption and Assignment of Certain Executory
                   Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules
                   6004(h) and 6006(d)

modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

39.     The failure to specifically include any particular provision of the APA (or the Back-Up APA, if applicable) in this Order shall not diminish or impair the efficacy of such provision, it being the intent of this Court that the APA (or the Back-Up APA, if applicable) and each and every provision, term and condition thereof be authorized and approved in their entirety.

40.     In accordance with the Procedures Order, if the Buyer fails to close on the sale of the Assets, without need for further order of the Court, the Debtors are hereby authorized to sell the Assets and any Subject Contracts designated for assumption and assignment in connection therewith free and clear of Liens and Claims and Interests to the Back-Up Bidder on substantially similar terms to the asset purchase agreement submitted by the Back-Up Bidder prior to the Auction, as amended and/or supplemented on the record at the Auction (as modified, the "Back-Up APA"), which agreement is hereby approved. The asset purchase agreement submitted by the Back-Up Bidder prior to the Auction is attached as Exhibit "A" and the transcript of the Auction is attached as Exhibit "B" to the Notice of Auction-Related Documentation filed by the Debtors on the docket in these cases on March 1, 2010.

Page (32)

| | |
|---|---|
| Debtor: | North Country BBQ Ventures, Inc. *et al.* |
| Case No. | 09-44194 (MS) |
| Caption of Order: | Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code (I) Authorizing Sale of Certain Assets of the Debtor Free and Clear of All Liens, Claims and Encumbrances Pursuant to Asset Purchase Agreement, (II) Approving the Asset Purchase Agreements, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and (IV) Waiving Fourteen-Day Stay Under Bankruptcy Rules 6004(h) and 6006(d) |

41.     As provided by Bankruptcy Rules 6004(h), 6006(d) and 7062, this Order shall be effective and enforceable immediately upon its entry, and the sale approved by this Order may close immediately upon entry of this Order, notwithstanding any otherwise applicable stay.

42.     The provisions of this Order are non-severable and mutually dependent.

43.     A true copy of this Order shall be served on all parties-in-interest by regular, first class mail within seven (7) days of the date hereof.

# **EXHIBIT A**

## AMENDED AND RESTATED ASSET PURCHASE AGREEMENT

THIS AMENDED AND RESTATED ASSET PURCHASE AGREEMENT (the "**Agreement**") shall be effective as of February 26, 2010 (the "**Effective Date**"), by and between Famous Dave's of America, Inc., a Minnesota corporation, or its designee ("**Purchaser**"), and North Country BBQ Ventures, Inc., a Delaware corporation ("**NC BBQ**"), North Country BBQ Ventures (Smithtown), LLC, a Delaware limited liability company ("**Smithtown**"), North Country BBQ Ventures (Westbury), LLC, a Delaware limited liability company ("**Westbury**"), North Country BBQ Ventures (Mountainside), LLC, a Delaware limited liability company ("**Mountainside**"), North Country BBQ Ventures (Brick), LLC, a Delaware limited liability company ("**Brick**"), North Country B.B.Q. Ventures (Hamilton), LLC, a Delaware limited liability company ("**Hamilton**"), North Country BBQ Ventures (New Brunswick), LLC, a Delaware limited liability company ("**New Brunswick**"), North Country BBQ Ventures (Woodbridge), LLC, a Delaware limited liability company ("**Woodbridge**"), (NC BBQ, Smithtown, Westbury, Mountainside, Brick, Hamilton, New Brunswick and Woodbridge are hereinafter each referred to individually as a "**Seller**" and collectively as the "**Sellers**").

This Agreement completely amends, restates and supersedes that certain Asset Purchase Agreement dated as of December 17, 2009, by and among Purchaser, Sellers, North Country BBQ Ventures (Manchester), LLC, a Delaware limited liability company ("**Manchester**"), and North Country BBQ Ventures (Hillsborough), LLC, a Delaware limited liability company ("**Hillsborough**"), as amended by Amendment No. 1 to Asset Purchase Agreement dated as of December 23, 2009 (collectively, the "**Prior Agreement**").

## RECITALS

A.      Sellers conduct the business of the ownership and operation of seven restaurants that utilize the "Famous Dave's" system and trademarks at the locations identified below (each referred to individually as a "**Restaurant**" and collectively as the "**Restaurants**"; the operation of the Restaurants, is referred to herein as the "**Business**"). In connection with the Business, Purchaser and each of the Sellers identified below are parties to those certain Franchise Agreements of various dates identified below (as amended from time to time, each referred to individually as a "**Franchise Agreement**" and collectively as the "**Franchise Agreements**"):

| Restaurant Location | Party to Agreement | Date of Agreement |
|---|---|---|
| 720 Smithtown Bypass, Smithtown, New York | Smithtown | June 17, 2004 |
| 1050 Corporate Drive, Westbury, New York | Westbury | December 17, 2004 |
| 1443 Route 22 East, Mountainside, New Jersey (hereinafter referred to as the "**Mountainside Location**") | Mountainside | August 16, 2001 |
| 950 Cedar Bridge Avenue, Brick Township, New Jersey | Brick | November 20, 2002 |
| 4215 Black Horse Pike, Hamilton (Mays Landing), New Jersey | Hamilton | October 10, 2003 |
| 23 U.S. Highway, Route 1 South, New Brunswick, New Jersey | New Brunswick | October 10, 2003 |
| 53 Lafayette Avenue, Metuchen, New Jersey (hereinafter referred to as the "**Woodbridge Location**") | Woodbridge | June 29, 2006 |

B.      On or about December 18, 2009, each of the Sellers filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court, District of New Jersey (the "**Bankruptcy Court**"). The chapter 11 cases filed by

Sellers, as well as those of certain non-Seller affiliates (the "**Bankruptcy Cases**") are jointly administered under NC BBQ's bankruptcy case for administrative purposes only. Sellers continue to operate the Businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

C.      Sellers desire to sell, and Purchaser desires to purchase, substantially all of the assets of Sellers used in the operation of the Restaurants in accordance with the terms and subject to the conditions set forth herein.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing premises which are hereby incorporated by reference and made a part of this Agreement, the mutual covenants and conditions contained herein, and for other consideration the receipt and legal sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

## Article 1
### Definitions

In addition to capitalized terms otherwise defined herein, the following terms shall have the meanings specified below.

"Assigned Contracts" means the Contracts listed on Schedule 2.1(b) to be assumed by Sellers and assigned to Purchaser or its designee under Section 365 of the Bankruptcy Code, as such schedule may be amended from time to time prior to the Closing Date pursuant to Section 2.5.

"Assignment and Assumption Agreement" means the Assignment and Assumption Agreement in substantially the form attached hereto as Exhibit B.

"Assumed Liabilities" has the meaning set forth in Section 2.4.

"Avoidance Claims" means any and all claims or causes of action under Chapter 5 of the Bankruptcy Code.

"Auction" means the auction contemplated by the Sale Procedures Order.

"Bankruptcy Cases" has the meaning set forth in the Recitals.

"Bankruptcy Code" has the meaning set forth in the Recitals.

"Bankruptcy Court" has the meaning set forth in the Recitals.

"Bill of Sale" means the Bill of Sale in substantially the form attached hereto as Exhibit A.

"Books and Records" means the books and records held for use in the conduct of the Business including, but not limited to, all personnel records, but excluding Sellers' corporate records and any documents not related to any of the Purchased Assets.

"Business" has the meaning set forth in the Recitals.

2

"Business Day" means any day of the year on which national banking institutions in the State of New Jersey are open to the public for conducting business and are not required or authorized to close.

"Closing" has the meaning set forth in Section 4.1.

"Closing Date" has the meaning set forth in Section 4.1.

"Closing Deadline" has the meaning set forth in Section 4.4.

"Code" means the Internal Revenue Code of 1986, as amended.

"Contemplated Transactions" has the meaning set forth in Section 4.1.

"Contract" means any agreement, contract obligation, promise, or undertaking, whether written or oral, to which any Seller is a party or otherwise bound.

"Cure Amount" or "Cure Amounts" means, as to each Assigned Contract, the amount required to be paid pursuant to Section 365(b) of the Bankruptcy Code in connection with the assumption by Sellers of such Assigned Contract as reported on a schedule filed with the Bankruptcy Court at least three (3) Business Days prior to the hearing for the approval of the Sale Order, which schedule was determined by the mutual agreement of the parties hereto and/or by agreement of the contract counterparties, in all such cases as determined by Final Order of the Bankruptcy Court.

"Effective Date" has the meaning set forth in the preamble.

"Encumbrance" means any lien, mortgage, pledge, security interest, easement, encumbrance, third party interest, or other restriction or limitation of any kind.

"Environmental Law" has the meaning set forth in Section 5.15.

"Excluded Assets" has the meaning set forth in Section 2.2.

"Excluded Restaurant" means collectively the Restaurant located at 1707 S. Willow Street, Manchester, New Hampshire and operated by Manchester, and the Restaurant located at 315 Route 206, Hillsborough, New Jersey and operated by Hillsborough.

"Final Order" means an order of the Bankruptcy Court which is not subject to any stay of its effectiveness or motion for reargument or rehearing and (i) as to which the time to appeal or petition for certiorari has expired and as to which no timely appeal, or petition for certiorari shall then be pending; or (ii) if a timely appeal or writ of certiorari thereof has been sought, the order shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or reargument or rehearing on remand shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for modification of such order, or move for reargument or rehearing shall have expired.

"Franchise Agreement" or "Franchise Agreements" has the meaning set forth in the Recitals.

"Governmental Authority" means any federal, state or local government, governmental authority, or regulatory or administrative authority or any court, tribunal, or judicial body having jurisdiction.

"Governmental Authorization" means any approval, consent, license, permit, waiver, or other authorization issued or granted by or under the authority of any Governmental Authority.

3

"Law" means any federal, state, local, municipal, or foreign law, ordinance, rule, regulation, statute or treaty.

"Lease Amendment" has the meaning set forth in Section 8.3.

"Mountainside Location" has the meaning set fort in the Recitals.

"Order" means any award, writ, injunction, judgment, order, or decree entered, issued, made or rendered by any Governmental Authority.

"Organizational Documents" means (i) the articles or certificate of incorporation and the bylaws of a corporation; (ii) the operating agreement or limited liability company agreement and the articles of organization or certificate of formation of a limited liability company; and (iii) any amendment to any of the foregoing.

"Person" means any individual, partnership, corporation, limited liability company, joint stock company, joint venture, estate, trust, association, unincorporated organization, Governmental Authority, or other entity.

"Purchase Consideration" has the meaning set forth in Section 3.1.

"Purchased Assets" has the meaning set forth in Section 2.1.

"Purchaser" has the meaning set forth in the preamble.

"Real Estate Lease" or "Real Estate Leases" means the lease agreements for the real property on which the Restaurants are located.

"Restaurant" or "Restaurants" has the meaning set forth in the Recitals.

"Seller Employment Obligations" has the meaning set forth in Section 8.4.

"Sale Order" has the meaning set forth in Section 7.5.

"Sale Procedures Order" means that certain Amended Order Approving Bidding and Auction Procedures and Scheduling Matters in Connection Therewith dated as of January 13, 2010 and appearing on the docket in the Bankruptcy Cases.

"Seller" or "Sellers" have the meaning set forth in the preamble.

"Tax" or "Taxes" means (i) any federal, state, provincial, local, foreign or other income, alternative, minimum, add-on minimum, accumulated earnings, personal holding company, franchise, capital stock, net worth, capital, profits, intangibles, windfall profits, gross receipts, value added, sales, use, goods and services, excise, customs duties, transfer, conveyance, mortgage, registration, stamp, documentary, recording, premium, severance, environmental (including taxes under Section 59A of the Code), natural resources, real property, personal property, ad valorem, intangibles, rent, occupancy, license, occupational, employment, unemployment insurance, social security, disability, workers' compensation, payroll, health care, withholding, estimated, or other similar tax, duty, levy, or other governmental charge or assessment or deficiency thereof (including all interest and penalties thereon and additions thereto whether disputed or not) and (ii) any transferee liability in respect of any items described in clause (i) above.

4

"Transaction Documents" means any agreements, instruments, or documents entered into, delivered or required to be delivered pursuant to this Agreement.

"Transfer Taxes" has the meaning set forth in Section 8.5.

"Treasury Regulations" means the regulations promulgated by the U.S. Treasury Department pursuant to the Code.

"Woodbridge Location" has the meaning set fort in the Recitals.

## Article 2
## Purchase and Sale of Assets

2.1    Purchased Assets.  On the terms and conditions of this Agreement, Sellers hereby agree to sell, transfer, convey and deliver to Purchaser, and Purchaser hereby agrees to purchase from Sellers, on and as of the Closing Date, all property and assets of Sellers, of every kind and description, real or personal, tangible or intangible, used in the operation of the Business, not including the Excluded Assets (the **"Purchased Assets"**).  The Purchased Assets shall include, without limitation, the following:

(a) all furniture, fixtures, equipment, smallwares, machinery, computers, point of sale hardware and software, décor items, memorabilia and other tangible personal property used or held in the Business including, but not limited to, all of the personal property described in Schedule 2.1(a);

(b) all right, title and interest of Sellers in and to all Real Estate Leases, all Franchise Agreements and all other Assigned Contracts identified on Schedule 2.1(b); provided, however, that Purchaser or its designee shall be permitted to exclude the Real Estate Lease and the Franchise Agreement for the Woodbridge Location at any time prior to the Closing, and, if so excluded, the Woodbridge Location shall be an Excluded Restaurant;

(c) all inventory, raw materials and supplies of the Business, wherever located, including but not limited to all rights of Sellers as to all suppliers associated with the Business, together with all uniforms, paper goods and promotional items used by Sellers in the operation of the Business;

(d) unlimited access to during reasonable business hours and Purchaser's ability to make copies of the Books and Records for up to six (6) months after the Closing Date;

(e) all rights of Sellers under any warranty or guarantee by any manufacturer, supplier or other transferor of the Purchased Assets for the Business;

(f) all of the intangible rights and property used in Sellers' conduct of the Business, including without limitation, Sellers' intellectual property rights to technology, licenses, construction or plans, drawings, memos, blueprints, and other work product of consultants or architects, telephone numbers, telecopy numbers and e-mail addresses and listings relating to the Business;

(g) to the extent legally transferable, all permits, licenses and approvals received from any governmental entity for the Business; provided however, that to the extent a liquor license is not held by Mountainside (in which case, such license shall not be a Purchased Asset), the Sellers shall cause North Country BBQ Ventures, LLC to transfer any liquor license it may hold to Purchaser as soon as reasonably practicable;

5

709617v1

(h) all leasehold improvements, signage and prepaid deposits in the possession of the applicable non-Seller counterparties for the Business;

(i) all rights, claims and causes of action of Sellers against third parties relative to the Purchased Assets and the proceeds thereof, excluding Avoidance Claims, tort claims against Sellers' current and former officers and directors, rights, claims and causes of action relating to any Excluded Restaurant, credit card payments that are in process and that originate from sales occurring prior to and including the Closing Date, and claims giving rise to Sellers' rights of set off with respect to its creditors; and

(j) any and all other properties, assets and rights of Sellers which are used in Sellers' conduct of the Business and are not expressly listed or referred to in Section 2.2 below or otherwise is not an Excluded Asset per the terms of this Agreement.

Effective as of the Closing Date, Sellers will transfer the Purchased Assets to Purchaser in accordance with this Agreement by delivering the Transaction Documents together with all required consents of any and all third parties, free and clear of all Taxes, Encumbrances or any other adverse claims of any kind.

2.2    Excluded Assets.   The following property and assets of Sellers are excluded from the sale to Purchaser (the "**Excluded Assets**"):

(a) Sellers' rights arising under this Agreement;

(b) Sellers' corporate records and any documents not related to any of the Purchased Assets;

(c) cash and any cash equivalents;

(d) accounts receivable resulting from retail sales by Sellers in the ordinary course of business prior to the Closing Date;

(e) any Contracts not specifically identified on Schedule 2.1(b) or not otherwise designated an Assigned Contract pursuant to the procedures described herein;

(f) all assets (including without limitation assets of the nature identified in Section 2.1) that are used exclusively in the operation of a Restaurant that is an Excluded Restaurant;

(g) rights, claims and causes of action relating to any Excluded Restaurant, Avoidance Actions, tort claims against Sellers' current and former officers and directors, credit card payments that are in process and that originate from sales occurring prior to and including the Closing Date, and claims giving rise to Sellers' rights of set off with respect to its creditors, and

(h) all assets of Sellers not related to the Business.

2.3    Proration of Income and Expenses.   To the extent assumed by Purchaser and except as otherwise provided herein, all deposits, reserves, income and expenses relating to the conduct of the business and operations of Sellers shall be prorated between Purchaser and Sellers in accordance with generally accepted accounting principles as of 11:59 p.m. prevailing Eastern time, on the date immediately preceding the Closing Date.  Such prorations shall include, without limitation, all utility expenses, insurance premiums, amounts due or to become due under all lease payments, real estate taxes (if any) and similar prepaid and deferred items.

2.4    Assumed Liabilities. Except as otherwise provided herein, Purchaser shall not and does not assume any liabilities or obligations of Sellers. Sellers shall be solely liable for all Taxes, liabilities and obligations arising from ownership of the Purchased Assets, operation of the Business and incidents and occurrences prior to the Closing Date, whether or not reflected in Sellers' books and records and whether or not such incidents or occurrences first became known following the Closing Date. Purchaser shall be solely liable for (i) all liability associated with any gift cards issued by Sellers, Hillsborough, and Manchester that are outstanding on the Closing Date and (ii) all Taxes, liabilities and obligations arising from ownership of the Purchased Assets, operation of the Business and incidents and occurrences beginning on the first day following the Closing Date and thereafter (the "**Assumed Liabilities**").

2.5    Contract Matters.

(a)    From the date hereof through the Closing Date, Purchaser or its designee shall have the right in its sole discretion to remove the Real Estate Lease and the Franchise Agreement for the Woodbridge Location from Schedule 2.1(b), in which case Schedule 2.1(b) shall be amended to remove such Contracts as Assigned Contracts. Any Contract removed from Schedule 2.1(b) shall become an Excluded Asset and shall not be an Assigned Contract for all purposes of this Agreement and all liabilities and obligations under such Contract shall constitute Excluded Liabilities for all purposes.

(b)    Sellers may in their sole and absolute discretion, subject to applicable Law, assume, assign, or reject any Contract other than an Assigned Contract at any time, provided, however, that in the event Sellers intend to do so prior to the Closing Date, Sellers shall notify Purchaser of such intent and Purchaser shall have two (2) Business Days to agree to treat said Contract as an Assigned Contract. In the event Purchaser does not agree in writing to treat said Contract as an Assigned Contract within said period, Sellers may assume, assign, or reject such Contract in their sole and absolute discretion at any time.

(c)    Except as otherwise provided in Section 3.1 below, on the Closing Date or as soon thereafter as reasonably practicable, Sellers shall pay, from the Purchase Consideration, the appropriate Cure Amount to each counterparty to an Assigned Contract.

2.6    Assignment of Purchased Assets. To the maximum extent permitted by the Bankruptcy Code, the Purchased Assets that constitute Assigned Contracts shall be assumed and assigned to Purchaser pursuant to Section 365 of the Bankruptcy Code as of the Closing Date or such other date as specified in the Sale Order or in this Agreement, as applicable.

2.7    Further Assurances. Sellers and Purchaser shall use commercially reasonable efforts to take, or cause to be taken, all appropriate action, including executing and delivering such documents and other papers, as may be required to consummate the transactions contemplated by this Agreement; provided, however, that nothing in this Section 2.7 shall prohibit any Seller from ceasing operations or winding up its affairs following the Closing Date.

709617v1

**Article 3**
**Purchase Consideration**

3.1    Purchase Consideration.  The aggregate consideration for the Purchased Assets shall be $7,435,000.00 (the "**Purchase Consideration**").   The Purchase Consideration shall be payable on the Closing Date as follows:

(a)    $564,402.95 constituting (i) the estimated Cure Amount through and including January 2010 and seventy-five percent of the estimated Cure Amount for February 2010 owing in connection with Sellers' assumption and assignment to Purchaser of the Franchise Agreements for the Business (excluding the Business for the Woodbridge Location) and (ii) the post-petition franchise fees for December 2009 and January 2010 and seventy-five percent of the estimated franchise fees for February 2010 arising from the franchise agreements between (x) Purchaser and Manchester; (y) Purchaser and Hillsborough; and (z) Purchaser and Woodbridge, shall be credited to and retained by Purchaser;

(b)    If and only if Purchaser or its designee does not elect to treat the Woodbridge Location as an Excluded Restaurant, $48,349.94 constituting the estimated pre-petition Cure Amount owing in connection with Sellers' assumption and assignment to Purchaser of the Franchise Agreement for the Business for the Woodbridge Location shall be credited to and retained by shall be credited to and retained by Purchaser;

(c)    $35,652.78, constituting the maximum, potential (i) additional Cure Amounts owing to Purchaser in connection with Sellers' assumption and assignment to Purchaser of the Franchise Agreements for the Business (including the Business for the Woodbridge Location to the extent applicable) and (ii) post-petition franchise fees arising from the franchise agreements between Purchaser and Manchester and Purchaser and Hillsborough (and, to the extent applicable, between Purchaser and Woodbridge), shall be deposited into a segregated account until the earlier of (x) Purchaser and Sellers entering into a written agreement regarding the allocation of such funds to each; or (y) the entry of a Final Order by the Bankruptcy Court resolving any dispute between Purchaser and Sellers regarding the allocation of such funds to each;

(d)    The Cure Amounts, if any, owing in connection with Sellers' assumption and assignment to Purchaser of the Real Estate Leases shall be paid (i) from the Purchase Consideration for that portion of the Cure Amounts attributable to the pre-Closing time period (the "Seller Cure Amounts"), and (ii) directly and independently by the Purchaser for that portion of the Cure Amounts arising from and after the Closing (the "Purchaser Cure Amounts"), which breakdown of Cure Amounts shall be set forth on Schedule 3.1(d) (to be finalized by mutual agreement of the Sellers and Purchaser prior to Closing) and be paid to each landlord under the Real Estate Leases (excluding the Cure Amount owing under the Real Estate Lease for the Woodbridge Location in the event that Purchaser elects to treat the Woodbridge Location as an Excluded Restaurant); and

(e)    Purchaser shall pay the balance of the Purchase Consideration (the "**Cash Consideration**") to Sellers or Sellers' designee(s) pursuant to instructions to be provided by Sellers to Purchaser on or prior to the Closing Date, or otherwise in accordance with any Final Order entered by the Bankruptcy Court.

3.2    Disputed Cure Amounts. If, on the Closing Date, any Cure Amount referred to in Section 3.1(d) is in dispute, Purchaser shall deposit the maximum amount of the alleged Seller Cure Amount (which amount as a percentage of the aggregate maximum alleged Cure Amount shall be determined with

8

reference to Schedule 3.1(d)) into a segregated account pending the entry of a Final Order by the Bankruptcy Court resolving such dispute. Within five (5) Business Days following delivery by Sellers to Purchaser of a Final Order from the Bankruptcy Court approving resolution of any dispute over the actual or claimed Cure Amount, any amount deemed to be a Cure Amount shall be credited to and retained by Purchaser or paid directly to each landlord in accordance with Section 3.1(e) or Order of the Bankruptcy Court and the balance shall be paid to Sellers or Sellers' designee(s) in cash pursuant to instructions to be provided by Sellers to Purchaser.

3.3    [Intentionally Omitted].

3.4    Allocation. The Purchase Consideration shall be allocated among the Restaurants that are not Excluded Restaurants in accordance with Schedule 3.4 attached hereto. Within 30 days after the Closing Date, Purchaser shall deliver to Sellers a further allocation, taking into account the per-Restaurant allocations reflected on Schedule 3.4, of the Purchased Assets for tax purposes, which further allocation shall be subject to the consent of the Sellers (such consent not to be unreasonably withheld or delayed). Each party agrees that it will adopt and utilize such allocation for purposes of completing and filing Form 8594 for Federal income tax purposes and no party hereto will voluntarily take any position inconsistent therewith upon examination of their respective Federal tax return, in any claim, litigation or otherwise with respect to such tax return.

## Article 4
## Closing

4.1    Closing. The closing ("**Closing**") of the transactions contemplated by this Agreement (the "**Contemplated Transactions**") shall take place at such place, date and time as the parties may mutually agree no later than one (1) Business Day following the date on which the conditions set forth in Article 9 hereof have been satisfied or waived (other than the conditions which by their nature are to be satisfied at the Closing, but subject to the satisfaction or waiver of such conditions). The date or time at which the Closing actually occurs is hereinafter referred to as the "**Closing Date**"; provided, however, that for purposes of this Agreement, the Closing shall be effective as of 12:01 a.m. on the first day following the Closing Date.

4.2    Closing Deliveries. At the Closing, and subject to the terms and conditions set forth in this Agreement, including without limitation the satisfaction or (if permissible) waiver of the conditions set forth in Article 9 hereof, the parties agree to consummate the transactions described below:

(a) Sellers shall deliver to Purchaser a certified copy of the Sale Order;

(b) Sellers will assign and transfer to Purchaser good and valid title in and to the Purchased Assets, free and clear of all Taxes and Encumbrances by delivering to Purchaser a bill of sale in substantially the form attached as Exhibit A (the "**Bill of Sale**"), and Purchaser will assume the Assumed Liabilities by delivering to Sellers an assignment and assumption agreement in substantially the form attached as Exhibit B (the "**Assignment and Assumption Agreement**");

(c) Sellers shall deliver a certificate of an authorized officer attaching, for each Seller, true and correct copies of all Organizational Documents and resolutions of the directors authorizing the execution and delivery of the Transaction Documents and the entering into and performance of the Contemplated Transactions;

(d) Sellers shall deliver such other assignments, certificates or instruments as may reasonably be required by Purchaser to effectuate the Contemplated Transactions and to convey to Purchaser all right, title and interest in and to the Purchased Assets;

(e) Purchaser will pay the Cash Consideration to Sellers or Sellers' designee(s) in accordance with Article 3; and

(f) Purchaser will pay the Purchaser Cure Amounts to applicable non-Debtor parties in accordance with Article 3.

4.3     Transfer of Operations.  Purchaser shall be entitled to immediate possession of, and to exercise all rights arising under, the Purchased Assets from and after the time that the Business opens for business at 12:01 a.m. on the first day following the Closing Date, and operation of the Business shall transfer at such time.  Except as provided hereby, all profits, losses, liabilities, claims, or injuries arising before such transfer shall be solely to the benefit or the risk of Sellers.  All such occurrences after transfer shall be solely to the benefit or the risk of Purchaser.  The risk of loss or damage by fire, storm, flood, theft, or other casualty or cause shall be in all respects upon Sellers prior to such transfer and upon Purchaser thereafter.

4.4     Termination.  This Agreement may be terminated as follows:

(a)     by mutual consent of Purchaser and Sellers;

(b)     by either Sellers or Purchaser if Purchaser is not approved by the Bankruptcy Court as the purchaser of the Purchased Assets; or

(c)     by Sellers or Purchaser, respectively, if, prior to the Closing, any condition set forth herein for the benefit of Sellers or Purchaser, respectively, that cannot be cured shall not have been timely satisfied or waived by the party that it benefits; or

(d)     by either Sellers or Purchaser if the Closing has not occurred on or prior to March 8, 2010 (the "**Closing Deadline**"), for any reason other than the delay or nonperformance of the party or parties seeking such termination; provided, however, that the unavailability of or the scheduling of a later date by the Bankruptcy Court shall extend the Closing Deadline to March 15, 2010;

In the event of termination of this Agreement, each party will return to the other all documents and materials obtained from the other in connection with the Contemplated Transactions, and will not use and will keep confidential all confidential information about the other party obtained pursuant to this Agreement.  Termination of this Agreement shall not in any way terminate, limit or restrict the rights and remedies of the non-breaching party against the party who has violated, breached or failed to satisfy any of the agreements, covenants, representations, warranties, conditions or other provisions of this Agreement prior to the termination hereof.  Termination of this Agreement shall terminate all obligations of the parties hereunder, except for the obligations under this Section, Sections 8.1, 8.8, 10.5 and Section 10.10, and such termination shall not constitute a waiver of any rights of any agreement or covenant in this Agreement occurring prior to such termination.  Notwithstanding anything contained in this Section 4.4 or otherwise provided herein, in the event Purchaser breaches its obligation to close, Seller shall have all of its remedies at law and equity, including the right to seek damages.

## Article 5
## Representations and Warranties of Sellers

Sellers hereby represent and warrant to Purchaser, as of the Effective Date and as of the Closing Date, as follows:

10

5.1    Organization; Good Standing, Etc.  NC BBQ is a corporation, and each of the remaining Sellers is a limited liability company, in each case duly organized, and each Seller is validly existing and in good standing under the Laws of the State of Delaware, and, subject to any necessary approval of the Bankruptcy Court, each has the requisite corporate or limited liability company power and authority to carry on its business as it is now being conducted and as it is proposed to be conducted after the transactions contemplated by this Agreement.

5.2    Business Activities; Subsidiaries.  Sellers have performed all acts necessary to operate the Business under applicable Law.

5.3    Authority.  Subject to entry of the Sale Order, the Transaction Documents to which each Seller is a party have been (or shall be as of the Closing Date) duly authorized by all necessary action of the board of directors of the Sellers, are duly executed and delivered by authorized individuals or officers, as applicable, are valid and binding agreements on the part of Sellers and are enforceable against Sellers in accordance with their respective terms.

5.4    Restrictive Covenants.  Except for the Franchise Agreements and the credit agreement with Wells Fargo Bank, N.A., no Seller is a party to, nor are the Purchased Assets bound or affected by, any agreement or document containing any covenant limiting any Seller's freedom to compete in any line of business or which materially or adversely affects the business practices, operations or conditions of the Business or the continued operation of the Business after the Closing Date on substantially the same basis and on substantially the same terms and conditions as the Business is presently carried on.

5.5    Actions, Suits and Proceedings.  Other than the Bankruptcy Cases and all claims asserted therein, or as otherwise set forth on Schedule 5.5, there are no actions, suits or proceedings pending or threatened against Sellers or any of the Purchased Assets in any court or before any federal, state, municipal or other governmental agency or before any other private or public tribunal or quasi-tribunal which, (a) if decided adversely to Sellers, would have a materially adverse effect upon the Business or Assets, (b) seek to restrain or prohibit the Contemplated Transactions or obtain any damages in connection therewith, or (c) in any way call into question the validity of this Agreement or the other Transaction Documents to be executed and delivered by Sellers.  Except as set forth on Schedule 5.5, no Seller is in default with respect to any order of any court or governmental agency entered against it in respect of the Business or the Purchased Assets.

5.6    No Material Violations.  Except as set forth in Schedule 5.6 hereto, no Seller is in violation of any applicable Law, rule or regulation relating to the Business that would reasonably be expected to have a material adverse effect on the Business, and, to the knowledge of Sellers, there are no requests, claims, notices, investigations, demands, administrative proceedings, hearings or other governmental claims against any Seller alleging the existence of any such violation.  Sellers have maintained all governmental licenses and permits necessary to operate the Business and is in material compliance with all such licenses and permits.

5.7    Title; Encumbrances.  Except as set forth in Schedule 5.7, Sellers have good and marketable title to all property included in the Purchased Assets.  Subject to the Sale Order, immediately after the Closing Date, Purchaser will own all of the rights, title and interest in and to the Purchased Assets, free and clear of all Taxes and Encumbrances.

5.8    Inventory Level.  Sellers shall maintain an inventory level sufficient to run the Business in the ordinary course.

5.9    Assigned Contracts.  Except as set forth on Schedule 5.9 hereto, Sellers and, to the knowledge of Sellers, each other party thereto, has performed all obligations required to be performed

11

under the Assigned Contracts to date, and are not in default under any Assigned Contract. The Assigned Contracts are each in full force and effect and are assignable to Purchaser without the consent of third parties (other than the Bankruptcy Court), and Sellers have not waived or assigned to any other person any of its rights thereunder. True, correct and complete copies of all Assigned Contracts, including all amendments or supplements thereto, have been delivered to Purchaser. All amounts due up through and including the Effective Date under each of the Assigned Contracts have been paid or will be paid pursuant to the Sale Order, and all amounts due up through the Closing Date under each of the Assigned Contracts have been timely paid by Sellers as of the Closing Date or will be paid pursuant to the Sale Order. No Assigned Contract shall prohibit or limit the ability of Purchaser to engage in any business activity or compete with any person in connection with the Business and/or other activities of the Purchaser.

 5.10 Taxes. Except as set forth in Sellers' schedules filed in the Bankruptcy Cases, Sellers have paid all Taxes, including federal, state and local income, profits, franchise, sales, use, property, excise, payroll, withholding, unemployment and other taxes and assessments (including interest and penalties) relating to or for Sellers, the Purchased Assets or the Business, in each case to the extent that such have become due and are not being contested in good faith. No audits, suits, actions, claims, investigations, inquiries, or proceedings are pending with respect to any tax liabilities of Sellers. All applicable sales and use Taxes shall be paid out of the proceeds of the sale as an allowed administrative claim in the Bankruptcy Cases, pursuant to Sections 503(b) and 507(a)(2) of the Bankruptcy Code.

 5.11 Labor and Employment Agreements. Sellers represent and warrant that no Seller is a party to any collectively bargained agreements with any union, collective bargaining agent or other entity regarding Sellers' Employment Obligations and/or Sellers' employees. Additionally, no Seller is a party to any other material written or oral agreement with any person that would provide one or more of Sellers' employees with rights to employment, severance pay, profit sharing, deferred compensation, bonuses, stock options, stock-purchase rights, pensions, retainers, consulting rights or payments, retirement plans, health care rights (including without limitation, dental care), vacation benefits, sick leave benefits, incentive pay, holiday leave, salary continuation for any reason, and/or other rights or benefits of employment. Further, Sellers represent and warrant that no Seller is a party to any other plan, agreement, arrangement or commitment to provide benefits of any type to any of Sellers' employees or independent contractors. Specifically, but without limiting the breadth of the foregoing representations and warranties, Sellers represent and warrant that:

 (a) Except as set forth in Sellers' schedules filed in their Bankruptcy Cases, Sellers have complied in all material respects with all applicable Laws, rules and regulations relating to the employment of their employees, the Sellers' Employment Obligations and the termination of any of Sellers' employees, including but not limited to those relating to wages, hours, and the payment and withholding of taxes and other sums as required by appropriate governmental authorities;

 (b) No trade union, council of trade unions, affiliated bargaining agency, employee bargaining agency or labor organization has bargaining rights, or has claimed to have bargaining rights, on behalf of any of Sellers' present or former employees;

 (c) Seller is not aware of any person who has asserted any charge, complaint, claims or demands against any Seller related to that person's present or former employment with such Seller, including without limitation any claims for discrimination, harassment, retaliation, breach of any contract, breach of any duty of good faith and fair dealing, breach of any duty allegedly owed by such Seller, invasion of privacy, interference with contract or with prospective business advantage, or any other state, local or federal common Law claim or cause of action; and

(d) No Seller is aware of any present or former employee who is or has within the past three years violated any covenant not to compete with any Seller, any agreement to maintain the confidentiality of Sellers' Business information, and/or any violation of any duty owed by the present or former employee to any Seller.

5.12    Pension and Welfare Plans.

(a) Sellers represent and warrant that there are no employee-benefit plans, as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), including without limitation each group insurance and self-insured health plan, severance-pay plan, non-qualified deferred-compensation plan and retirement plan intended to be qualified under Code Section 401(a), and that is maintained or contributed to by Sellers for their employees engaged in the operation of the Business, former employees of the Business and/or dependents and beneficiaries of such employees and/or former employees (collectively, the "**ERISA Plans**"); and each trust fund maintained by the Sellers or any subsidiary in connection with any such ERISA Plan; and

(b) Except as described in Schedule 5.12, no Seller maintains any group life insurance or health-benefit coverage for former employees or directors of Sellers, other than group life insurance or health-benefit coverage mandated by applicable Law. Sellers have timely complied with all of its "COBRA" obligations under ERISA Section 602, Code Section 4980B and applicable state insurance Laws.

5.13    Environmental Matters. To the best of Sellers' knowledge, Sellers are, and at all times have been, in full compliance with, and have not been in violation of or liable under, any Environmental Law (as defined below) such that non-compliance or violation would reasonably be expected to have a materially adverse effect on the Business or the Purchased Assets. Sellers have no basis to expect, nor has any Seller received, any actual or threatened order, notice or other communication from any governmental agency, office or body, or any private citizen, acting in the public interest, or the current or prior owner or operator of any building in which Sellers conduct the Business, of any actual or potential violations or failure to comply with any Environmental Law. Sellers hold all Environmental Permits (as defined below) necessary for operating the Business and Sellers are in material compliance with all applicable Environmental Permits. All Hazardous Materials and Solid Waste (as each is defined below) on or in the Business have been properly removed and disposed of, and to Sellers' knowledge no past or present disposal, discharge, spill, or other release of, or treatment, transportation, or other handling of Hazardous Materials or Solid Waste on, in, or off-site from the Business will subject Purchaser, or any subsequent owner, occupant, or operator of the Business, to corrective or compliance action or any other liability. For purposes of this Agreement, the term "**Environmental Law**" shall mean any legal requirement that requires or relates to: (a) advising appropriate authorities, employees and/or the public of intended or actual releases of pollutants or hazardous substances or materials, violations of discharge limits or other prohibitions, and the commencement of activities, such as resource extraction or construction, that could have a significant impact on the environment; (b) preventing or reducing to acceptable levels the release or existence of pollutants or hazardous materials or substances in the environment; (c) reducing the quantities, preventing the release or minimizing the hazardous characteristics of wastes that are generated; (d) assuring that products are designed, formulated, packaged and used so that they do not present unreasonable risks to human health or the environment when used or disposed of; (e) protecting resources, species or ecological amenities; (f) reducing to acceptable levels the risks inherent in the transportation of hazardous substances, pollutants or other potentially harmful substances; (g) cleaning up pollutants that have been released, preventing the threat of release, or paying the costs of such clean up or prevention; or (h) making responsible parties pay private parties or groups of private parties for damages done to their health or the environment, or permitting self-appointed representatives of the public interest to recover for injuries done to public property or assets.

"**Environmental Permits**" shall mean all permits, licenses, certificates, approvals, authorizations, regulatory plans or compliance schedules required by applicable Environmental Laws, or issued by a governmental entity pursuant to applicable Environmental Laws, or entered into by agreement of the party to be bound, relating to activities that affect the environment, including without limitation, permits, licenses, certificates, approvals, authorizations, regulatory plans and compliance schedules for air emissions, water discharges, pesticide and herbicide or other agricultural chemical storage, use or application, and Hazardous Material or Solid Waste generation, use, storage, treatment and disposal. "**Hazardous Material**" shall mean all substances and materials designated as hazardous or toxic as of the date hereof pursuant to any applicable Environmental Law. "**Solid Waste**" shall mean any garbage, refuse, sludge from a waste treatment plant, water supply treatment plan, or air pollution control facility, and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities.

5.14    Insurance Coverage. Sellers have policies of fire, liability, workers compensation, health and other forms of insurance presently in effect with respect to the Business and the Purchased Assets. All such policies are valid, outstanding and enforceable policies and provide insurance coverage for the properties, assets and operations of Sellers, of the kinds, in the amounts and against the risks provided for in such policies (which amounts and risks covered are reasonable for Sellers' business); and no such policy provides for or is subject to any currently enforceable retroactive rate or premium adjustment, loss sharing arranging or other actual or contingent liability arising wholly or partially out of events arising prior to the date hereof. No notice of cancellation or termination has been received with respect to any such policy, and no Seller has knowledge of any act or omission of any Seller which could result in cancellation of any such policy prior to its scheduled expiration date. No Seller has been refused any insurance with respect to any aspect of the operations of the Business nor has any such coverage been limited by any insurance carrier to which it has applied for insurance or with which it has carried insurance during the last three years. Sellers have duly and timely made all claims it has been entitled to make under each policy of insurance. Copies of such policies and any and all information with respect to such policies requested by Purchaser shall be made available to Purchaser upon Purchaser's request. All such policies provide "occurrence" as opposed to "claims made" coverage, and provide that they will remain in full force and effect through the Closing Date.

5.15    Disclosure. The representations and warranties contained in this Article 5 do not contain any untrue or misleading statement of a material fact or omit to state any material fact necessary in order to make the statements and information contained in this Article 5 not misleading.

5.16    Warranties Exclusive.  The Purchaser acknowledges that the representations and warranties contained in Article 5 are the only representations and warrants given by Sellers and that all other express and implied warranties are disclaimed.  Without limiting the foregoing and except as otherwise provided in this Agreement and without waiving any defenses to liability under any Law, Purchaser acknowledges that the Purchased Assets are conveyed "AS IS", "WHERE IS" and "WITH ALL FAULTS" and that all warranties of merchantability or fitness for a particular purpose are disclaimed.  WITHOUT LIMITING THE FOREGOING, THE PURCHASER ACKNOWLEDGES THAT THE SELLERS HAVE MADE NO REPRESENTATION OR WARRANTY CONCERNING (A) ANY USE TO WHICH THE PURCHASED ASSETS MAY BE PUT, (B) ANY FUTURE REVENUES, COSTS, EXPENDITURES, CASH FLOW, RESULTS OF OPERATIONS, FINANCIAL CONDITION OR PROSPECTS THAT MAY RESULT FROM THE OWNERSHIP, USE OR SALE OF THE PURCHASED ASSETS OR THE ASSUMPTION OF THE ASSUMED LIABILITIES, (C) ANY OTHER INFORMATION OR DOCUMENTS MADE AVAILABLE TO THE PURCHASER (OR RELATED PERSONS), OR (D) EXCEPT AS EXPRESSLY SET FORTH IN ARTICLE 5, THE CONDITION OF THE PURCHASED ASSETS, INCLUDING, WITHOUT LIMITATION, COMPLIANCE WITH ANY ENVIRONMENTAL LAWS OR OTHER LAWS. "Related Person"

14

means, with respect to the parties hereto, any officer, director, employee, agent, shareholder, representative, successor or assign of such party.

## Article 6
## Representations and Warranties of Purchaser

Purchaser represents and warrants to Sellers as follows:

6.1    Organization.  Purchaser is a corporation validly existing, and in good standing under the Laws of the State of Minnesota.  Purchaser has the requisite power and authority to own or lease and to operate and use its properties and to carry on its business as now conducted.

6.2    Authority; Validity.  Purchaser has the requisite power and authority necessary to enter into and perform its obligations under this Agreement and the Transaction Documents to which Purchaser is a party and to consummate the transactions contemplated hereby and thereby.  The execution, delivery and performance by Purchaser of this Agreement and the Transaction Documents to which it is a party have been duly and validly authorized by all requisite action on the part of Purchaser.  This Agreement has been duly and validly executed and delivered by Purchaser and each Transaction Document to which Purchaser is a party will be duly and validly executed and delivered by Purchaser.  This Agreement constitutes, and upon execution and delivery by Purchaser, each Transaction Document to which Purchaser is a party will constitute, the legal, valid, and binding obligations of Purchaser, enforceable against Purchaser in accordance with their respective terms, except in each case as such enforceability is limited by bankruptcy, insolvency, reorganization, moratorium, or similar Laws now or hereafter in effect relating to creditors' rights generally or general principles of equity.

6.3    Consents.  Purchaser is not required to give any notice to, make any filing with, or obtain any consent from any Person in connection with the execution and delivery of this Agreement and the Transaction Documents or the consummation or performance of any of the transactions contemplated hereby and thereby.

6.4    No Conflict.   The execution and delivery of this Agreement and the Transaction Documents by Purchaser and the consummation of the transactions contemplated hereby and thereby will not breach any of the terms of, or constitute a default under, or conflict with, or cause any acceleration of any obligation of Purchaser under (a) the Organizational Documents of Purchaser, (b) any contract or agreement with respect to which Purchaser is a party or otherwise bound, (c) any Order applicable to Purchaser, or (d) any Law.

6.5    Availability of Funds.  Purchaser has sufficient cash in immediately available funds to satisfy all of its obligations hereunder so as to permit Purchaser to consummate the Contemplated Transactions contemplated by this Agreement and the Transaction Documents.

6.6    Litigation.   There are no proceedings pending or, to the knowledge of Purchaser, threatened that would affect Purchaser's ability to perform its obligations under this Agreement or any Transaction Documents or to consummate the transactions contemplated hereby or thereby.

6.7    Brokers or Finders.  Neither Purchaser nor any Person acting on behalf of Purchaser has paid or become obligated to pay any free or commission to any broker, finder, investment banker, agent or intermediary for or on account of the transactions contemplated by this Agreement for which Sellers are or will become liable.

6.8    Assigned Contracts.  Purchaser is and will be capable of satisfying the conditions contained in Section 365(f)(2)(B) of the Bankruptcy Code with respect to the Assigned Contracts and shall,

15

consistent with Section 9.2, cooperate with Sellers to provide proof of such capability as is necessary to satisfy counterparties to such Assigned Contracts or to satisfy the Bankruptcy Court.

## Article 7
## Actions Prior to the Closing Date

7.1    <u>Operations Prior to the Closing Date</u>.  From and after the Effective Date through the Closing, except as expressly contemplated by this Agreement or with the prior written consent of Purchaser (which consent shall not be unreasonably withheld or delayed), or as otherwise required by Law:

(a)    Sellers shall, subject to Sellers' obligations and duties as debtors in possession and except as may be necessary or required in connection with the Bankruptcy Cases:

(i)    use reasonable efforts to carry on the Business in the ordinary course (provided that nothing herein shall prohibit Sellers from closing any Restaurant that has been designated an Excluded Restaurant pursuant to this Agreement);

(ii)    use reasonable efforts to retain employees necessary to conduct the Business as it is currently being conducted; provided, however, notices required under applicable federal and state law may be given to employees;

(iii)    use reasonable efforts to comply in all material respects with all Laws with respect to the conduct of the Business; and

(iv)    use reasonable efforts to comply in all material respects with contractual obligations under the Assigned Contracts (excluding only the monetary obligations under the Franchise Agreements which, except for any Franchise Agreement for an Excluded Restaurant, shall be paid or escrowed from the sale proceeds as the Cure Amount for such Franchise Agreement being assumed and assigned at Closing in accordance with the terms hereof).

(b)    Sellers shall not:

(i)    other than sales in the ordinary course of business and other than the incurrence of Encumbrances permitted to any debtor-in-possession financing of Sellers or Order of the Bankruptcy Court authorizing Sellers' use of cash collateral, sell, lease, transfer or otherwise dispose of, or mortgage or pledge, or voluntarily impose or suffer to be imposed, any Encumbrance on any of the Purchased Assets;

(ii)    amend any of the Assigned Contracts other than non-material amendments made in the ordinary course or amendments accepted by Purchaser in writing; or

(iii)    enter into any agreement or commit to any action prohibited by this Section 7.1.

7.2    <u>Reasonable Efforts</u>.

(a)    Each of Sellers and Purchaser shall use their respective commercially reasonable efforts to take, or cause to be taken, all actions and do, or cause to be done, and to assist and cooperate with the other in the doing all things necessary, proper, or advisable to consummate, in

16

the most expeditious manner practicable, the Contemplated Transactions, including, without limitation, using commercially reasonable efforts to: (i) cause the conditions precedent set forth in Article 9 to be satisfied; and (ii) obtain Bankruptcy Court approval of the Sale Order.

(b)     Subject to any restrictions under applicable Laws, Sellers and Purchaser (i) shall promptly inform each other of any communication from any Governmental Authority concerning this Agreement, the transactions contemplated hereby, and any filing, notification, or request for approval and (ii) shall permit the other to review in advance any proposed written or material oral communication or information submitted to any such Governmental Authority in response thereto.

7.3     <u>Access Rights Prior to Closing</u>.  From the date that a Sale Order is entered by the Bankruptcy Court through the Closing, Purchaser shall have all access to the Business reasonably necessary to accomplish the transition of management, including, but not limited to, access to the Premises, the right to observe operations, and the right to communicate with employees.

7.4     <u>Bankruptcy Court Approval</u>.  Sellers and Purchaser acknowledge that this Agreement and the consummation of the transactions contemplated hereby are subject to Bankruptcy Court approval. Sellers and Purchaser acknowledge that (i) each must comply with the Sale Procedures Order, and (ii) Purchaser must provide adequate assurance of future performance within the meaning of Section 365(f)(2)(B) of the Bankruptcy Code with respect to the Assigned Contracts.  With respect to each Assigned Contract, Purchaser shall provide adequate assurance as required under the Bankruptcy Code of the future performance by Purchaser of each Assigned Contract.  Purchaser agrees that it will promptly take all actions reasonably required to assist in obtaining a Bankruptcy Court finding that there has been an adequate demonstration of adequate assurance of future performance under the Assigned Contracts, such as furnishing timely requested and factually accurate affidavits, non-confidential financial information, and other documents or information for filing with the Bankruptcy Court.

7.5     <u>Sale Order</u>.  Sellers will use their commercially reasonable efforts to consummate the transactions contemplated hereby by seeking, with one or more appropriate motion or motions and the entry of appropriate Orders of the Bankruptcy Court (all such motions and Orders being in form and substance reasonably satisfactory to Purchaser), such Orders, among other things approving this Agreement and the purchase of the Purchased Assets by Purchaser, free and clear of all Taxes and Encumbrances, and the assumption of the Assumed Liabilities pursuant to Section 363(b), (f), (l), and (m) and Section 365 of the Bankruptcy Code (the "**Sale Order**").  The Sale Order will be in a form and of a substance agreeable to Sellers and Purchaser in their reasonable respective discretion.

7.6     [Intentionally Omitted].

7.7     <u>Notice of Developments</u>.  Sellers shall give prompt written notice to Purchaser upon obtaining knowledge (i) of any development constituting a material adverse effect on the Business, (ii) that any representation or warranty made by Sellers herein was untrue or inaccurate as of the date hereof, (iii) of any matter or event first arising or occurring after the date hereof that must be disclosed or described in the schedules to this Agreement in order for the representations and warranties made by Sellers to be true and correct, (iv) of any development materially and adversely affecting the ability of any Seller to consummate the transactions contemplated by this Agreement, and (v) of any written notice or other written communication from any Governmental Authority (other than the Bankruptcy Court) in connection with the transactions contemplated by this Agreement.

7.8     <u>Communications with Suppliers</u>. Upon request of Purchaser, as soon as reasonably practicable after the date of the Auction or the date that a motion is filed for a Sale Order, Sellers will use

17

their reasonable efforts to arrange for discussions between representatives of Purchaser and material vendors of the Business including, but not limited to, the material vendors listed on <u>Schedule 7.8</u>.

## Article 8
## Additional Covenants and Agreements

8.1    <u>Confidential Information</u>.  The parties, including each of the Sellers (whether or not such Seller is a signatory thereto), hereby agrees to be bound by the terms of that certain Confidentiality Agreement between Purchaser and NC BBQ dated as of November 20, 2009, which shall remain in full force in effect and is incorporated herein by reference.  Notwithstanding the preceding sentence, following the Effective Date of this Agreement, Purchaser and Sellers shall be permitted to issue any press release or report required by applicable law or, with respect to Purchaser, required or permitted by the rules of the stock exchange on which Purchaser's securities are listed for trading, and to provide any notice required under applicable bankruptcy laws.

8.2    [Intentionally Omitted]

8.3    <u>Real Estate Lease Amendment</u>.  From and after the Effective Date, Sellers shall cooperate with Purchaser and use their respective commercially reasonable efforts to negotiate and amend, on terms acceptable to Purchaser in its sole discretion, the Real Estate Lease for the Restaurant located at the Woodbridge Location (such amendment, in a form reasonably acceptable to Purchaser in its sole discretion, is referred to herein as the "**Lease Amendment**").

8.4    <u>Labor and Employment Matters</u>.  Except as otherwise specifically provided in this Agreement, Purchaser is not assuming, and shall not assume, any obligations that have or will accrue to Sellers arising out of Sellers' employment or retention of any person at any time (regardless of whether the person was classified as an employee or independent contractor), including without limitation any wage or salary payment obligations, any obligations arising under any past or present pension plan, profit-sharing plan, deferred-compensation plan, severance plan, employee welfare plan, sick leave plan or policy, vacation plan or policy (or any existing obligation to pay or provide any vacation benefits, wage or other employee-benefit plan or policy, and/or any obligations arising our of any other formal or informal procedure, policy or practice of Sellers ("**Seller Employment Obligations**") regardless of whether the Seller Employment Obligations are disclosed by Sellers or otherwise mentioned in this Agreement.  Sellers covenant that they will pay or otherwise satisfy, at or prior to the Closing, all accrued and unpaid (or unsatisfied) Seller Employment Obligations.  Sellers will further comply with all state, federal or local employee notification Laws or rules, including without limitation the federal Worker Adjustment and Retraining Notification Act (WARN).  Sellers will terminate the employment of all of Sellers' employees relating to the Business, effective as of 11:59 E.D.T. on the date immediately preceding the Closing Date.  Purchaser may, in its sole and absolute discretion, offer employment to any of Sellers' employees or independent contractors immediately at or prior to the Closing, pursuant to terms determined solely by Purchaser.  Upon reasonable prior notice, Sellers will permit Purchaser to have contact with Sellers' employees and/or independent contractors.  To the extent permitted by Law, Sellers also agree to provide Purchaser with information in Sellers' files and records (as Purchaser may reasonably request) regarding Sellers' employees and/or independent contractors.  To the extent Purchaser retains and employs any of Sellers' managerial employees, Purchaser shall honor the accrued vacation benefits for such employees accruing from January 1, 2010 through the Closing Date.

8.5    <u>Taxes</u>.

(a)    Any sales Tax, use Tax, or similar Tax attributable to the sale or transfer of the Purchased Assets and not exempted under applicable Law ("**Transfer Taxes**") shall be borne by

Sellers. Sellers and Purchasers shall use commercially reasonable efforts and cooperate to exempt the sale and transfer of the Purchased Assets from any Transfer Taxes.

(b)     Subject to Section 9.4(a) hereof, Purchaser shall be liable for the payment of any and all personal property Taxes with respect to the Purchased Assets for any Tax period during which the Closing Date falls and shall be entitled to a credit against the Cash Consideration for the portion of such Taxes accruing prior to the Closing Date, which shall be pro rated using the amount of the property Tax assessment for such Purchased Asset for such Tax period, if available, or if otherwise based on the property Taxes paid with respect to such Purchased Asset during the preceding Tax year. With respect to any Taxes that are delinquent as of the Closing Date, the amount of which is known and not subject to dispute, Purchaser shall pay the delinquent amount of such Taxes directly to the applicable Governmental Authority at the Closing.

(c)     Purchaser and Sellers agree to furnish or cause to be furnished to each other, upon request, as promptly as practicable, such information and assistance relating to the Business and the Purchased Assets as is reasonably necessary for the filing of all tax returns, the making of any election relating to Taxes, the preparation for any audit by an taxing authority, the prosecution or defense of any claims, suit or proceeding relating to any Tax.

8.6    Casualty. If, prior to the Closing, all or any material portion of the Purchased Assets is destroyed by fire or other casualty, Purchaser may elect to:

(a)     terminate this Agreement, whereupon no party shall have any further obligation to any other hereunder; or

(b)     purchase the Purchased Assets notwithstanding any such destruction and reduce the consideration payable by Purchaser hereunder in an amount equal to all costs necessary to restore the Purchased Assets to their original condition prior to the casualty.

Sellers shall be entitled to retain all insurance proceeds, awards, and other amounts paid or payable to Sellers by any insurance company, Governmental Authority, or other Person by reason of the destruction of the Purchased Assets.

8.7    Sellers' Payroll Obligations. As of the Closing Date, Sellers shall have paid all payroll obligations owing to all employees of the Restaurants (except for the Excluded Restaurants) up to and including the Closing Date. To the extent any such payroll obligations remain unpaid as of the Closing Date, Sellers agree to pay such obligations from the proceeds of the sale as an allowed administrative claim in the Bankruptcy Cases, pursuant to Sections 503(b) and 507(a)(2) of the Bankruptcy Code.

8.8    Gift Cards. Purchaser agrees that it will not assert any claim against any of the Sellers, Hillsborough or Manchester in their Bankruptcy Cases in connection with or arising out of gift cards issued by any of the Sellers, Manchester or Hillsborough and redeemed by any Person after the Closing Date.

8.9    Satisfaction of Claims. Purchaser agrees that, upon payment of the Purchase Consideration in accordance with Section 3.1, Sellers, Manchester, and Hillsborough will be deemed to have satisfied in full any claims Purchaser may hold against such entities as of the Closing Date (except any claims solely arising from and in connection with this Agreement), and Purchaser agrees that it will not file or otherwise assert (i) any claims against the Sellers (including Woodbridge, if Purchaser does not elect to treat the Woodbridge Location as an Excluded Restaurant) and (ii) any claims arising on or before the Closing Date against Manchester and Hillsborough (and Woodbridge, if the Woodbridge Location is or becomes an Excluded Restaurant) in the Bankruptcy Cases.

709617v1

## Article 9
## Conditions to Closing

Purchaser's obligations to consummate the Contemplated Transactions are subject to the satisfaction of each of the following conditions prior to or at the Closing, unless specifically waived in writing by Purchaser in advance:

9.1    Representations and Covenants. The representations and warranties of Sellers contained in this Agreement shall be true and correct in all material respects as of the date of this Agreement, and as of the Closing Date as though the Closing Date had been substituted for the date of this Agreement throughout such representations and warranties (except that any representation or warranty made as of a specified date other than the date hereof need only be true as of such date), and Sellers shall have delivered to Purchaser a certificate of an officer of each Seller, as contemplated by Section 4.2(c), to such effect. Sellers shall have duly performed and complied with all covenants and agreements and satisfied all conditions required by this Agreement to be performed, complied with or satisfied by Sellers prior to or at the Closing.

9.2    Approval of the Bankruptcy Court. Sellers shall have obtained entry of the Sale Order, the effectiveness of which has not been stayed by the Bankruptcy Court.

9.3    Third Party Consents and Approvals. Sellers shall have obtained all third-party consents necessary to consummate the Contemplated Transactions, excluding only liquor licenses.

9.4    Operation of Business. Sellers shall have, through the Closing Date, operated the Business in the ordinary course of business in conformity with its past practices and in compliance with the terms and conditions of the Franchise Agreements; and

9.5    Optional Lease Amendment. With respect to the Woodbridge Location and only in the event that Sellers have entered into a Lease Amendment with the landlord for the Woodbridge Location, Sellers shall have delivered to Purchaser this Lease Amendment.

## Article 10
## General Provisions

10.1    Assignment. Purchaser may assign any or all of its rights under this Agreement to any affiliate of Purchaser upon written notice to Sellers of such assignment. Other than an assignment by Purchaser to an affiliate, neither Purchaser nor any Seller may assign any of their respective rights under this Agreement without the prior written consent of the other party. The terms and provisions of this Agreement shall be binding upon and shall inure to the benefit of the parties hereto, their successors and permitted assigns, and no person, firm or corporation other than the parties, their successors and assigns, shall acquire or have any rights under or by virtue of this Agreement.

10.2    Further Assurances. Notwithstanding any provision herein to the contrary, without further consideration, Sellers, as authorized by the Bankruptcy Court, shall execute and deliver to Purchaser such further instruments of sale, transfer, conveyance, assignment and confirmation, as shall be helpful, necessary, and/or appropriate to effectuate the terms of this Agreement, including the transfer of the Purchased Assets, regardless of whether or not such documents are prepared as of the Closing Date.

10.3    Non-Survival. No representation or warranty contained herein or in the Transaction Documents shall survive the execution and delivery of this Agreement and the consummation of the Contemplated Transactions.

20

10.4    Entire Agreement.  This Agreement, the exhibits and schedules attached hereto and the agreements and instruments referred to hereby, constitute the entire agreement and understanding among Sellers and Purchaser with respect to the sale and purchase of the Purchased Assets and the other Contemplated Transactions.  The parties hereby agree that all prior representations, understandings and agreements between the parties with respect to the sale and purchase of the Purchased Assets, and the other Contemplated Transactions, are superseded by the terms of this Agreement.

10.5    Choice of Law; Venue.  This Agreement shall be construed and interpreted in accordance with the Laws of the State of New York, without regard to its conflicts-of-law provisions, as though all acts and omissions related to this Agreement occurred in the State of New York.  All disputes related to or arising under this Agreement including, but not limited to, any disputes relating to claims arising under section 365 of the Bankruptcy Code, shall be subject to the exclusive jurisdiction of the Bankruptcy Court.  Each party hereby (i) waives any objection which it might have now or hereafter to the foregoing venue of any such litigation, action or proceeding, (ii) irrevocably submits to the exclusive jurisdiction of any such court set forth above in any such litigation, action or proceeding, and (iii) waives any claim or defense of inconvenient forum.  Each party hereby consents to service of process by registered mail, return receipt requested, at such party's address set forth in this Agreement (as modified by written notice of a party from time to time) and hereby expressly waives the benefit of any contrary provision of Law.

10.6    Injunctive Relief.  The parties hereto acknowledge and agree that the other parties would be damaged irreparably in the event any of the provisions of this Agreement are not performed substantially in accordance with their specific terms.  Accordingly, each of the parties agrees that the other parties shall be entitled to injunctive relief to prevent breaches of this Agreement and to enforce specifically the substantial performance of this Agreement.

10.7    No Consequential Damages.  Except as prohibited by Law, Purchaser waives any right it may have to claim or recover any special, exemplary, punitive or consequential (including business interruption) damages, or any damages other than, or in addition to, actual damages.

10.8    Waiver.  At any time prior to Closing, Purchaser and Sellers may (a) extend the time for the performance of any of the obligations or other acts of the other party hereto, (b) waive any inaccuracies in the representations and warranties of the other party contained herein or in any document delivered pursuant hereto, and (c) waive compliance with any of the obligations of the other party or any conditions to its own obligations contained herein to the extent permitted by Law.  Any agreement on the part of Purchaser, on the one hand, and Sellers, on the other hand, to any such extension or any waiver shall be valid only if set forth in an instrument in writing signed on behalf of the party against which it is to be enforced.  The failure of a party to exercise any right or remedy shall not be deemed or constitute a waiver of such right or remedy in the future.  No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other similar or dissimilar provision hereof, nor shall any such waiver constitute a continuing waiver unless otherwise expressly provided.

10.9    Severability.  The provisions of this Agreement shall, where possible, be interpreted so as to sustain their legality and enforceability, and for that purpose the provisions of this Agreement shall be read as if they cover only the specific situation to which they are being applied.  The invalidity or unenforceability of any provision of this Agreement in a specific situation shall not affect the validity or enforceability of that provision in other situations or of other provisions of this Agreement.

10.10    Expenses.  Except as otherwise expressly provided in this Agreement, each Seller and Purchaser shall each pay their own respective costs and expenses in connection with this Agreement and the Contemplated Transactions, including without limitation any finder's fees, brokerage, legal, tax, and advisory fees and expenses, or other commission arising by reason of any services rendered or alleged to have been rendered to such party in connection with this Agreement or the Contemplated Transactions.

709617v1

10.11    Counterparts. This Agreement may be executed in counterparts, each of which shall be considered an original, and signatures for this Agreement may be delivered by facsimile or other means of electronic transmission, and any such signature shall be considered valid and binding to the same extent as delivered original signatures.

10.12    Notices. All notices given pursuant to this Agreement shall be delivered in writing by overnight courier or sent by United States registered mail, postage prepaid, addressed as set forth below:

<table>
<tr><td><em>If to Purchaser:</em></td><td>Famous Dave's of America, Inc.<br>Attn: Chief Financial Officer<br>12701 Whitewater Drive, Suite 200<br>Minnetonka, MN 55343</td></tr>
<tr><td><em>with a copy to:</em></td><td>Maslon Edelman Borman & Brand, LLP<br>c/o William M. Mower, Esq.<br>90 South Seventh Street, Suite 3300<br>Minneapolis, MN 55402</td></tr>
<tr><td><em>If to Sellers:</em></td><td>North Country BBQ Ventures, Inc.<br>c/o David Reilly<br>571 Central Avenue<br>New Providence, NJ 07974</td></tr>
<tr><td><em>with a Copy to:</em></td><td>Crowell & Moring LLP<br>c/o Mark S. Lichtenstein, Esq.<br>590 Madison Avenue, 20th Floor<br>New York, NY 10022</td></tr>
</table>

All notices shall be deemed to have been duly given (a) if and when delivered in person, (b) four (4) days after being mailed by United States registered mail, postage prepaid, or (c) one (1) Business Day after deposit with an overnight courier and sent prepaid for next Business Day delivery, in each case to each other party hereto at the addresses set forth above (or to such other addresses as any such party may designate in writing in accordance with this Section 10.12).

10.13    Schedules and Exhibits. Sellers and Purchaser acknowledge and agree that the form of the Schedules and Exhibits attached hereto are in final form; provided, however, that at anytime prior to the Closing, Purchaser may in its sole discretion make any modifications reasonably necessary for purposes of excluding the Franchise Agreement and the Real Estate Lease for the Woodbridge Location from the list of contracts to be assumed and assigned to Purchaser or its designee pursuant to the Sale Order and this Agreement. In the event Purchaser or its designee makes such election, neither Purchaser nor its designee shall be responsible for any obligations of Sellers owing under the Franchise Agreement or the Real Estate Lease for the Woodbridge Location at anytime.

*Signature Page Follows*

709617v1

IN WITNESS WHEREOF, the parties have caused this Amended and Restated Asset Purchase Agreement to be executed and delivered by their duly authorized officers effective as of the date first above written.

**SELLERS:**

North Country BBQ Ventures, Inc.,
a Delaware corporation


By:_____
    David A. Reilly
    Its Chief Financial Officer


North Country BBQ Ventures (Smithtown), LLC
a Delaware limited liability company
By North Country BBQ Ventures, Inc.,
its Managing Member


By:_____
    David A. Reilly
    Its Chief Financial Officer


North Country BBQ Ventures (Westbury), LLC
a Delaware limited liability company
By North Country BBQ Ventures, Inc.,
its Managing Member


By:_____
    David A. Reilly
    Its Chief Financial Officer


North Country BBQ Ventures (Mountainside), LLC
a Delaware limited liability company
By North Country BBQ Ventures, Inc.,
its Managing Member


By:_____
    David A. Reilly
    Its Chief Financial Officer


*Signature Page – Amended and Restated Asset Purchase Agreement dated effective February 26, 2010*

North Country BBQ Ventures (Brick), LLC
a Delaware limited liability company
By North Country BBQ Ventures, Inc.,
its Managing Member


By:_____
    David A. Reilly
    Its Chief Financial Officer


North Country B.B.Q. Ventures (Hamilton), LLC
a Delaware limited liability company
By North Country BBQ Ventures, Inc.,
its Managing Member


By:_____
    David A. Reilly
    Its Chief Financial Officer


North Country BBQ Ventures (New Brunswick), LLC
a Delaware limited liability company
By North Country BBQ Ventures, Inc.,
its Managing Member


By:_____
    David A. Reilly
    Its Chief Financial Officer


North Country BBQ Ventures (Woodbridge), LLC
a Delaware limited liability company
By North Country BBQ Ventures, Inc.,
its Managing Member


By:_____
    David A. Reilly
    Its Chief Financial Officer


*Signature Page – Amended and Restated Asset Purchase Agreement dated effective February 26, 2010*

709617v1

**PURCHASER:**

FAMOUS DAVE'S OF AMERICA, INC.
a Minnesota corporation

By:_____
     Diana G. Purcel
     Its Chief Financial Officer

*Signature Page – Amended and Restated Asset Purchase Agreement dated effective February 26, 2010*

709617v1

## SCHEDULES TO APA BRICK

**North Country BBQ Ventures (Brick), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 2.1(a) – Personal Property to be Sold**

**All tangible personal property, including machinery, equipment, computers, furniture, automobiles, trucks, inventories of supplies, manufactured, spare and purchased parts, stores, goods in process and finished goods that, in each case, are owned by North Country BBQ Ventures (Brick), LLC including without limitation:**

| Manufacturer | Equipment Description | Model | Serial Number |
|---|---|---|---|
| Henny Penny | Holding Cabinet | HC 900 | CV052JC |
| Baker Pride | Char Grill | XX-8 | 34763 |
| Henny Penny | Fryer | OFG-322 | CNO |
| APW | Toaster | N/A | N/A |
| Henny Penny | Fryer | OFG-322 | AN05450 |
| Baker Pride | XX-8CG | N/A | 34922 |
| Henny Penny | Holding Cabinet | HC 900 | N/A |
| Henny Penny | Heated drawers | HP 941 | N/A |
| WELLS | Steam Table | SS276U1 | JAB4637 |
| WELLS | Steam Table | SS276U1 | JAB4639 |
| APW | Heat lamp | FFD 72 | N/A |
| APW | Heat lamp | FFD 72 | N/A |
| WELLS | Steam Well | SS276U1 | JAB4634 |
| APW | Heat lamp | FFD 72 | 0303D02407 |
| Henny Penny | Heated drawers | HP 941 | N/A |
| WELLS | Steam Table | SS276U1 | JAB4353 |
| WELLS | Steam Table | SS276U1 | JAB4642 |
| APW | Heat lamp | FD 24 | 0709D05507 |
| Hatco | Booster | C-45 | 3361400701 |
| APW | Steam Well | HFW1D | 0303D01962 |
| APW | Steam Well | HFW1D | 0303D01961 |
| US Range | Stock Pot Range | N/A | N/A |
| US Range | 4 Burner Range | N/A | N/A |
| Garland | Convection Oven | MCO-GS10S | 0302CJ0413 |
| Garland | Convection Oven | MCO-GS10S | 0302CJ0536 |
| Garland | Convection Oven | MCO-GS10S | 03032CJ0532 |
| Garland | Convection Oven | MCO-GS10S | 0302CJ-U1A |
| Southern Pride | Smoker | VLUR-14003630 | 658 |
| Cook Shack | Smoker | 250 | DG2526 |
| Crescor | Holding Cabinet | CO151FVA12B2083 | BODJ27116478 |
| Crescor | Holding Cabinet | CO151FVA12B2083 | BODJ27116477 |
| KloppenBerg | Ice bin | N/A | N/A |
| Manitowoc | Ice Machine | QDDUAL2C | 30262257 |
| Delfield | Mug Freezer | UC414B | BCY606344T |
| Perlick | Beer Cooler | B53DP | 465981 |
| Perlick | Beer Cooler | B53DP | 465856 |
| Perlick | Mug Freezer | 8365AVL | 53223 |
| Thermo Kool | Walk In cooler | N/A | P-413361-PHTS |
| Thermo Kool | Walk In Freezer | N/A | 40064-PHTS |

## SCHEDULES TO APA BRICK

| Thermo Kool | Beer Cooler | N/A | N/A |
|---|---|---|---|
| Delfield | U/C RI Cooler | ST4048 | BC0614616T |
| Delfield | Lowboy Drawer | F2952C | 94098M |
| Delfield | U/C Freezer | 403 | BRYC07549T |
| Delfield | Lowboy Drawer | F2952C | 94095M |
| Delfield | Baymarie | 4427N30A | BC2601219T |

| GMAC | Catering Truck | N/A | N/A |
|---|---|---|---|
| GMAC | Catering Truck | N/A | N/A |

27

## SCHEDULES TO APA HAMILTON

### North Country BBQ Ventures (Hamilton), LLC
### Schedules to Asset Purchase Agreement
### Schedule 2.1(a) - Personal Property to be Sold

**All tangible personal property, including machinery, equipment, computers, furniture, automobiles, trucks, inventories of supplies, manufactured, spare and purchased parts, stores, goods in process and finished goods that, in each case, are owned by North Country BBQ Ventures (Hamilton), LLC including without limitation:**

| Manufacturer | Equipment Description | Model | Serial Number |
|---|---|---|---|
| Hatco | Booster | C-45 | 8427070425 |
| APW | Bunn Toaster | MB-3 | 04-D04794 |
| Henny Penny | Fryer | ORG-322 | BN0406030 |
| Henny Penny | Fryer | ORG-322 | BN0406031 |
| Wells | Steam Well | SS-276ULTD | JAB-5187 |
| Henny Penny | Holding Cabinet | HC-900 | DA0406067 |
| Henny Penny | Holding Cabinet | HC-900 | DA0406066 |
| Baker Pride | Vhar Grill | XX-10 | 43072 |
| Henny Penny | Heated Drawer | MP-941 | N/A |
| Henny Penny | Heated Drawer | MP-941 | N/A |
| Wells | Steam Well | SS-276ULTD | JAB-5223 |
| Wells | Steam Well | SS-276ULTD | JAB-5224 |
| APW | Heat Lamp | FDD-72 | 0406D0386 |
| APW | Steam Well | HFW-1D | 0406D3564 |
| APW | Steam Well | HFW-1D | 0406D3563 |
| US Range | Stack Pot Range | N/A | 30430009 |
| US Range | 4 burner Range | RMPA-424A | 406J0061 |
| US Range | Convection Oven | SUMG-100 | 0406CJ1231 |
| US Range | Convection Oven | SUMG-100 | 406251232 |
| US Range | Convection Oven | SUMG-100 | 406121233 |
| US Range | Convection Oven | SUMG-100 | 406251234 |
| CookShack | Smoker | 250 | DG2505 |
| Crescor | Cook & Hold | CO151FUT12BL208 | J46920-1542 |
| Crescor | Cook & Hold | CO151FUT12BL2083 | J54057-685 |
| Wells | Steam Table | SS-276ULTD | JAB-5186 |
| Southern Pride | Smoker | N/A | N/A |
| N/A | Walk-In Cooler | N/A | N/A |
| N/A | Walk-In Freezer | N/A | N/A |
| N/A | Walk-In Cooler | N/A | N/A |
| Perlick | Freezer | FR60SS | 509410 |
| Glass Tender | Beer Cooler | BB84R6SNHLL | 404-90683 |
| Glass Tender | Beer Cooler | BB84R6SNHLL | 404-90684 |
| Perlick | Freezer | RR4855 | 509403 |
| MasterBuilt | Freezer | LV46871 | 039A0004 |
| Delfield | U/C Ref | UGM048 | 045036101988T |
| Delfield | Bay Marina | 4432N-12M | BCQ624186-T |
| Scottsman | Ice Bin | N/A | N/A |
| Scottsman | Ice Machine | CME208RLS-1A | 758527-113 |
| Delfield | Bay Marina | 4460N-24-M | 0406036100064T |

## SCHEDULES TO APA HAMILTON

| Delfield | Low Boy Drawer | F2962C | 040503600067OM |
|----------|----------------|--------|----------------|
|          |                |        |                |

| GMAC | Catering Truck | N/A | N/A |
|------|----------------|-----|-----|

29

## SCHEDULES TO APA MOUNTAINSIDE

### North Country BBQ Ventures (Mountainside), LLC
### Schedules to Asset Purchase Agreement
### Schedule 2.1(a) - Personal Property to be Sold

**All tangible personal property, including machinery, equipment, computers, furniture, automobiles, trucks, inventories of supplies, manufactured, spare and purchased parts, stores, goods in process and finished goods that, in each case, are owned by North Country BBQ Ventures (Mountainside), LLC including without limitation:**

| Manufacturer | Equipment Description | Model | Serial Number |
|---|---|---|---|
| Southern Pride | BBQ Oven | XLR-1400-SLSE | 575 |
| Henny Penny | Heated Holding Cabinet | HC-900 | N/A |
| Henny Penny | Heated Holding Cabinet | HC-900 | N/A |
| Bakers Pride | Broiler | XX-10 | 5.54E+04 |
| Henny Penny | Duel Fryer | OFG-322 | BN0509020 |
| Henny Penny | Duel Fryer | OFG-322 | BN0509019 |
| APW | Toaster | M-33 | 0409D0614 |
| US Range | 2 burner range | N/A | N/A |
| US Range | 4 burner range | N/A | N/A |
| Crescor | Heated Holding Cabinet | N/A | N/A |
| Garland | Convection oven | MASTER 200 | N/A |
| Garland | Convection oven | MASTER 200 | N/A |
| Vulcan | Convection oven | VC4GD-10 | 54-1004064 |
| Vulcan | Convection oven | VC4GD-10 | 54-1004035 |
| Cook Shack | Smoker oven | 250 | DI-2841 |
| Crescor | Heated Holding Cabinet | N/A | N/A |
| Manitowoc | Ice Machine | QDDUALZC | 20161522 |
| Henny Penny | 1 Draw warmer | MP-941 | N/A |
| Henny Penny | 1 Draw warmer | MP-941 | N/A |
| Randell | 1 Door lowboy | 9404-7C3 | T39996-1 |
| Delfield | 2 Door lowboy | UC4148 | BBY57998-T |
| Perlick | Lowboy | C5064ESCUL | 451870 |
| Perlick | Lowboy 4 draw table | C5065ESCUL | 451804 |
| Delfield | 2 Door lowboy | UC4148 | BA0574988-T |
| Manitowoc/Rooftop | Cond Unit/Walk-In | CVD10753 | 20190200 |
| Heat Craft/Rooftop | Cond Unit/Walk-In | MOH030D73CETS | T00F00325 |
| Manitowoc/Rooftop | Cond Unit/Walk-In | CID10753 | 20190519 |
| Thermo Kool | Walk-In Freezer | N/A | N/A |
| Thermo Kool | Walk-In Cooler | N/A | N/A |
| Heat Craft/Rooftop | Walk-In Freezer | N/A | N/A |
| Heat Craft/Rooftop | Walk-In Cooler | N/A | N/A |
| Thermo Kool | Walk-In Cooler | N/A | 39315 PHTS |
| Heat Craft/Rooftop | Cond Unit/Walk-In | MOH015D70CF | TO2A-02416 |
| Delfield | Lowboy 4 draw table | F296-2C | N/A |
| Delfield | 1 Door lowboy | 407 | BBY578899-T |
| Delfield | Prep table | 4464N-24M | 7.03152E+11 |

## SCHEDULES TO APA MOUNTAINSIDE

| GMAC | Catering Truck | N/A | N/A |

## SCHEDULES TO APA NEW BRUNSWICK

### North Country BBQ Ventures (New Brunswick), LLC
### Schedules to Asset Purchase Agreement
### Schedule 2.1(a) - Personal Property to be Sold

**All tangible personal property, including machinery, equipment, computers, furniture, automobiles, trucks, inventories of supplies, manufactured, spare and purchased parts, stores, goods in process and finished goods that, in each case, are owned by North Country BBQ Ventures (New Brunswick), LLC including without limitation:**

| Manufacturer | Equipment Description | Model | Serial Number |
|---|---|---|---|
| Panasonic | Microwave | NE-1757R | 6A161800065 |
| Amana | Microwave | N/A | N/A |
| Crescor | Roast & Hold | C0151FUA12BL2083 | JADJ44565 |
| Crescor | Roast & Hold | C0151FUA12BL2083 | KADJ46326887 |
| US Range | Convection Oven | SUMG-100 | 0311C00429 |
| Cook Shack | Smoker | 250 | DG204 |
| Vulcan | Broiler | GHCB515-103 | 60-1093001A01 |
| Henny Penny | Holding Cabinet | HC-900 | JU240JC |
| APW | Toaster | N/A | N/A |
| Crescor | | H137WSUA12C | CAGJ111988591 |
| Pitco | Fryer | SG14-S | G06CB008633 |
| Pitco | Fryer | SG14-S | G06CB008634 |
| Pitco | Fryer | SG14-S | G06CB008635 |
| Pitco | Fryer | SG14-S | G06CB008636 |
| Ecolab DM | Dishmachine | WH-44 | JP2396WH |
| US Range | Stock Pot | N/A | N/A |
| Vulcan | Oven | GH6 | 481359783 |
| US Range | Oven | SUMG-100 | N/A |
| Southern Pride | Smoker | N/A | N/A |
| Glo-Ray | Heat Lamp | GRAHL-60D | 9915080101 |
| Glo-Ray | Heat Lamp | GRAHL-60D | 9915080102 |
| Henny Penny | Hot Draw | MP-941 | N/A |
| Glo-Ray | Heat Lamp | GRAHL-420 | 9980580106 |
| VollRath | Foodwarmer | 2000 | 17613 |
| APW | Warmer | HFW-1D | 031DD08876 |
| Hatco | Heat Lamp | GRAHL60D | 9915080101 |
| Masterbilt | Ice Cream | N/A | N/A |
| Hoshizaki | R/I Refrigerator | RHI-AAC-HD | N600701 |
| Kolpak | W/I Freezer | N/A | N/A |
| Kolpak | W/I Fridge | N/A | D1A02471RSR21 |
| Hoshizaki | Ice Machine | KM-630MRF | N/A |
| Delfield | Prep Table | N/A | N/A |
| Delfield | Lowboy | 403 | 4.08036E+12 |
| Delfield | Lowboy | UCD4432N | SCP625 |
| Delfield | Counter Rail | CTP8160-NB | 99299M |
| Perlick | Lowboy | C5079SCUL | 441999 |
| Perlick | Lowboy | 8365AVC | 442879 |

## SCHEDULES TO APA NEW BRUNSWICK

| | | | |
|---|---|---|---|
| Perlick | Lowboy | C5079SCUL | 441998 |
| Perlick | Lowboy | 83SOSSOL | 422910 |

| | | | |
|---|---|---|---|
| GMAC | Catering Truck | N/A | N/A |

33

## SCHEDULES TO APA SMITHTOWN

### North Country BBQ Ventures (Smithtown), LLC
### Schedules to Asset Purchase Agreement
### Schedule 2.1(a) - Personal Property to be Sold

**All tangible personal property, including machinery, equipment, computers, furniture, automobiles, trucks, inventories of supplies, manufactured, spare and purchased parts, stores, goods in process and finished goods that, in each case, are owned by North Country BBQ Ventures (Smithtown), LLC including without limitation:**

| Manufacturer | Equipment Description | Model | Serial Number |
|---|---|---|---|
| APW | Steam Well | HFW-1D | 412000067 |
| APW | Steam Well | HFW-1D | 412000075 |
| APW | Heat lamps | FDD-72 | N/A |
| Wells | Steam Well | SS276-01 | N/A |
| Wells | Steam Well | SS276-01 | N/A |
| Wells | Steam Well | SS276-01 | N/A |
| Henny Penny | Steam Draw | MP-901 | N/A |
| APW | Bun Toaster | N/A | N/A |
| Henny Penny | Fryer | OFG-322 | BN041243 |
| Henny Penny | Fryer | OFG-322 | BN041244 |
| Henny Penny | Heat & Hold | HC-900 | DA0412037 |
| Henny Penny | Heat & Hold | HC-900 | DA0412038 |
| Imperial | Stock Pot Burner | N/A | N/A |
| Imperial | 6-Burner oven range | N/A | N/A |
| Imperial | Convection Oven | N/A | N/A |
| Imperial | Convection Oven | N/A | N/A |
| Imperial | Convection Oven | N/A | N/A |
| Imperial | Convection Oven | N/A | N/A |
| Cook Shack | Smoker | 250 | DG-2666 |
| Crescor | Holding Cabinet | C0151FUA | LAE-J75932728 |
| Crescor | Holding Cabinet | C0151FUA | LAE-J75932729 |
| Southern Pride | Smoker | XLR-1400SLSE | N/A |
| Delfield | Cooler | N/A | N/A |
| Perlick | Glass chiller | FR6055 | N/A |
| Glass Tender | Cooler | BB84-R63H | 404-91861 |
| Glass Tender | Cooler | BB84-R63H | 404-91862 |
| Perlick | Cooler | FR4855 | N/A |
| Master Bilt | R/I Freezer | N/A | N/A |
| Delfield | Cooler | 4460NLYM | N/A |
| Delfield | Cooler | N/A | N/A |
| Scottsman | Ice Machine | Eclipse | N/A |
| Enodis | Cooler | UC4048 | 410036102629 |
| Leer | Roof top cond Unit | N/A | N/A |
| Leer | Roof top cond Unit | N/A | N/A |
| Leer | Roof top cond Unit | N/A | N/A |

| GMAC | Catering Truck | N/A | N/A |
|---|---|---|---|

## SCHEDULES TO APA WESTBURY

### North Country BBQ Ventures (Westbury), LLC
### Schedules to Asset Purchase Agreement
### Schedule 2.1(a) - Personal Property to be Sold

**All tangible personal property, including machinery, equipment, computers, furniture, automobiles, trucks, inventories of supplies, manufactured, spare and purchased parts, stores, goods in process and finished goods that, in each case, are owned by North Country BBQ Ventures (Westbury), LLC including without limitation:**

| Manufacturer | Equipment Description | Model | Serial Number |
|---|---|---|---|
| APW | Steam Well | HFW-10 | N/A |
| APW | Steam Well | HFW-10 | N/A |
| APW | Heat Lamp | FDD-48 | 5.06E+08 |
| APW | Heat Lamp | FDD-48 | N/A |
| APW | Heat Lamp | FDD-48 | 0506D07500 |
| Wells | Steam Well | SS-2760LTA | N/A |
| Wells | Steam Well | SS-2760LTA | N/A |
| Wells | Steam Well | SS-2760LTA | N/A |
| Wells | Steam Well | SS-2760LTA | N/A |
| Crescor | Holding Cabinet | H137SUA12C | AAH-J137092 |
| Henny Penny | Holding Cabinet | HC-900 | DA0507170 |
| Henny Penny | Steam Draw | MP-941 | N/A |
| Henny Penny | Steam Draw | MP-941 | N/A |
| Bakers Pride | Grill | N/A | N/A |
| Henny Penny | Fryer | OPG-322 | BN0507041 |
| Henny Penny | Fryer | OPG-322 | BN0507042 |
| APW | Bun Toaster | MB-8 | 0908D04518 |
| Crescor | Roast & Hold | CO151FUA | 1495 |
| Crescor | Roast & Hold | CO151FUA | 1494 |
| Cook Shack | Smoker | 250 | DG2744 |
| Vulcan | Convection Oven | VC4G0-10 | N/A |
| Vulcan | Convection Oven | VC4G0-10 | N/A |
| Vulcan | Convection Oven | VC4G0-10 | N/A |
| Vulcan | Convection Oven | VC4G0-10 | N/A |
| Southbend | Smoker | XLD-1400SLSE | 750 |
| Southbend | Range | 4 BURNER | N/A |
| Imperial | Stock Pot | N/A | N/A |
| Perlick | Cooler | B53DP | 520672 |
| Perlick | Cooler | B53DP | 520671 |
| Perlick | Glass Chiller | F560AS | 504528 |
| Manitowoc | Ice machine | QYDUAL-4C | 40360998 |
| Randell | Cooler | 9302-7 | T27495-1 |
| Randell | Cooler | 90404-7 | N/A |
| Randell | Cooler | 9040K-7 | T28801-2 |
| Delfield | Cooler Draw | 129620 | N/A |
| Randell | Cooler | 9404F-7 | T40000-1 |
| Imperial | Walk-In Freezer | N/A | 05-ST-41872-01A |

## SCHEDULES TO APA WESTBURY

| Imperial | Walk-In Cooler | N/A | 05-ST-41872-01B |
|---|---|---|---|
| Imperial | Walk-In Cooler Beer | N/A | 05-ST-41872-01C |
| Randell | Cooler | 9412-32-7 | T29812-1 |

| GMAC | Catering Truck | N/A | N/A |
|---|---|---|---|

36

## SCHEDULES TO APA WOODBRIDGE

### North Country BBQ Ventures (Woodbridge), LLC
### Schedules to Asset Purchase Agreement
### Schedule 2.1(a) - Personal Property to be Sold

**All tangible personal property, including machinery, equipment, computers, furniture, automobiles, trucks, inventories of supplies, manufactured, spare and purchased parts, stores, goods in process and finished goods that, in each case, are owned by North Country BBQ Ventures (Woodbridge), LLC including without limitation:**

| Manufacturer | Equipment Description | Model | Serial Number |
|---|---|---|---|
| Bakers Pride | Broiler | XX-10 | 62048 |
| Crescor | Holding Cabinet | N/A | N/A |
| Pitco | Fryer | SG-14-S | G07BA002994 |
| Pitco | Fryer | SG-14-S | G07BA002995 |
| Pitco | Fryer | SG-14-S | G07BA002996 |
| Pitco | Fryer | SG-14-S | G07BA002997 |
| APW | Toaster | M-95-3 | 0611D05796 |
| Vulcan | Range | G36LC | 656120456 |
| Vulcan | Oven | VC4GD-10 | 54-1008520 |
| Vulcan | Oven | VC4CD-10 | 54-1008519 |
| Vulcan | Oven | VC4CD-10 | 54-1008521 |
| Vulcan | Oven | VC4CD-10 | 54-1008524 |
| American Perment ware | Warmer | HFW-1D | 0612D05781 |
| American Perment ware | Warmer | HFW-1D | 0612D06772 |
| American Perment ware | Warmer | HFW-1D | 0612D06775 |
| American Perment ware | Elements | FDD-48 | 0612D05836 |
| American Perment ware | Elements | FDD-48 | N/A |
| American Perment ware | Elements | FDD-48 | 0612D05837 |
| Panasonic | Micro wave | NE-1757R | 6A86180337 |
| Panasonic | Micro wave | NE-1757R | 6A17160039 |
| Panasonic | Micro wave | NE-1757R | 6A17160035 |
| Panasonic | Micro wave | NE-1757R | 6A17160044 |
| Jackson | Dishmachine | WH-44 | 07C219050 |
| VanGuard | DM Booster | PM200N | 0607-200N-311 |
| Cook Shack | Smoker | 250 | DT 2970 |
| Crescor | Roast & Hold | CO151FUA12B2083FD | AAHJ1371021304 |
| Crescor | Roast & Hold | CO15FVA12B2083FD | AAHJ1371021303 |
| N/A | 2 burner range | N/A | N/A |
| Southern Pride | Smoker | XLR 1400 | 803 |
| Henny Penny | Warming Draw | MP-941 | N/A |
| Henny Penny | Warming Draw | MP-941 | N/A |
| Randell | Lowboy | 9404-7M | T53675-1 |
| Randell | Ice Cream Freezer | 9550-AM | T53676-1 |
| Cornelius | Soda | CB232AHFK8 | 63G0714KD158 |
| Perlick | Lowboy | BS-84 | 617067 |
| Perlick | Lowboy | FR-36PS | 617014 |

## SCHEDULES TO APA

| Perlick | Lowboy | BS-32 | 617123 |
|---------|--------|-------|--------|
| Randell | Lowboy Prep table | 9200-32-7 | N/A |
| Randell | Prep table | 9200-32-7 | N/A |
| Delfield | 4 Draw Lowboy | F2962C | 0701036000223M |
| Randell | Low Boy | 9404-7M | T533674-1 |
| Randell | Low Boy Freezer | 9404F-7M | T53673-1 |
| Manitowoc | Ice machine | QYDUAL4C | 110559119 |
| Imperial | WI Cooler | N/A | N/A |
| Imperial | WI Cooler | N/A | N/A |
| Imperial | WI Freezer | N/A | N/A |

| GMAC | Catering Truck | N/A | N/A |
|------|----------------|-----|-----|

## SCHEDULES TO APA BRICK

**North Country BBQ Ventures (Brick), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 2.1(b) – Contracts to be Assigned**

None

## SCHEDULES TO APA HAMILTON

**North Country BBQ Ventures (Hamilton), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 2.1(b) - Contracts to be Assigned**

None

## SCHEDULES TO APA MOUNTAINSIDE

**North Country BBQ Ventures (Mountainside), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 2.1(b) - Contracts to be Assigned**

None

## SCHEDULES TO APA NEW BRUNSWICK

**North Country BBQ Ventures (New Brunswick), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 2.1(b) - Contracts to be Assigned**

None

## SCHEDULES TO APA SMITHTOWN

**North Country BBQ Ventures (Smithtown), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 2.1(b) - Contracts to be Assigned**

None

## SCHEDULES TO APA WESTBURY

**North Country BBQ Ventures (Westbury), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 2.1(b) - Contracts to be Assigned**

None

## SCHEDULES TO APA

**North Country BBQ Ventures (Woodbridge), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 2.1(b) - Contracts to be Assigned**

None

## SCHEDULES TO APA

**Schedules to Asset Purchase Agreement**
**Schedule 3.1(d) – Breakdown of Cure Amounts**

## SCHEDULES TO APA

### Schedules to Asset Purchase Agreement
### Schedule 3.4 – Allocation of Purchase Consideration

**Schedule 3.4.1 (Applicable if the Woodbridge Location is NOT an Excluded Restaurant)**

| Seller | Percentage of Purchase Consideration |
| --- | --- |
| Brick | 15.1% |
| Hamilton | 10.7% |
| Mountainside | 17.1% |
| New Brunswick | 3.0% |
| Smithtown | 8.3% |
| Westbury | 41.5% |
| Woodbridge | 4.3% |

**Schedule 3.4.2 (Applicable if the Woodbridge Location is an Excluded Restaurant)**

| Seller | Percentage of Purchase Consideration |
| --- | --- |
| Brick | 15.8% |
| Hamilton | 11.2% |
| Mountainside | 17.8% |
| New Brunswick | 3.1% |
| Smithtown | 8.7% |
| Westbury | 43.4% |

## SCHEDULES TO APA BRICK

**North Country BBQ Ventures (Brick), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 5.5 – Actions and Proceedings**

None

## SCHEDULES TO APA HAMILTON

### North Country BBQ Ventures (Hamilton), LLC
### Schedules to Asset Purchase Agreement
### Schedule 5.5 - Actions and Proceedings

Juanita Kunen          vs.          Famous Dave's BBQ, North Country BBQ
                                    Ventures, LLC, BFW/Pike Associates, LLC
                                    and ABC Companies 1 Through 5 and
                                    John Does 1 Through 5

## SCHEDULES TO APA MOUNTAINSIDE

**North Country BBQ Ventures (Mountainside), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 5.5 - Actions and Proceedings**

None

## SCHEDULES TO APA NEW BRUNSWICK

**North Country BBQ Ventures (New Brunswick), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 5.5 - Actions and Proceedings**

None

## SCHEDULES TO APA SMITHTOWN

**North Country BBQ Ventures (Smithtown), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 5.5 - Actions and Proceedings**

None

## SCHEDULES TO APA WESTBURY

**North Country BBQ Ventures (Westbury), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 5.5 - Actions and Proceedings**

None

## SCHEDULES TO APA WOODBRIDGE

**North Country BBQ Ventures (Woodbridge), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 5.5 - Actions and Proceedings**

None

## SCHEDULES TO APA BRICK

**North Country BBQ Ventures (Brick), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 5.6 – Material Violations**

None

## SCHEDULES TO APA HAMILTON

**North Country BBQ Ventures (Hamilton), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 5.6 - Material Violations**

None

## SCHEDULES TO APA MOUNTAINSIDE

**North Country BBQ Ventures (Mountainside), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 5.6 - Material Violations**

None

## SCHEDULES TO APA NEW BRUNSWICK

**North Country BBQ Ventures (New Brunswick), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 5.6 - Material Violations**

None

## SCHEDULES TO APA SMITHTOWN

**North Country BBQ Ventures (Smithtown), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 5.6 - Material Violations**

None

## SCHEDULES TO APA WESTBURY

**North Country BBQ Ventures (Westbury), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 5.6 - Material Violations**

None

## SCHEDULES TO APA WOODBRIDGE

**North Country BBQ Ventures (Woodbridge), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 5.6 - Material Violations**

None

## SCHEDULES TO APA BRICK

**North Country BBQ Ventures (Brick), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 5.7 – Encumbrances**

| | Lien Holder | Description | Amount |
|---|---|---|---|
| 1 | Wells Fargo Bank | Secured claim incurred on December 1, 2006 on Substantially all of the debtor's assets. | No less than $13,815,922.49 as of December 18, 2009 |
| 2 | GMAC | Auto loan secured by the debtor's truck. | $25,987.76 |

## SCHEDULES TO APA HAMILTON

### North Country BBQ Ventures (Hamilton), LLC
### Schedules to Asset Purchase Agreement
### Schedule 5.7 - Encumbrances

|   | Lien Holder | Description | Amount |
|---|---|---|---|
| 1 | Wells Fargo Bank | Secured claim incurred on December 1, 2006 on Substantially all of the debtor's assets. | No less than $13,815,922.49 as of December 18, 2009 |

63

## SCHEDULES TO APA MOUNTAINSIDE

**North Country BBQ Ventures (Mountainside), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 5.7 - Encumbrances**

|   | Lien Holder | Description | Amount |
|---|---|---|---|
| 1 | Wells Fargo Bank | Secured claim incurred on December 1, 2006 on Substantially all of the debtor's assets. | No less than $13,815,922.49 as of December 18, 2009 |

## SCHEDULES TO APA NEW BRUNSWICK

### North Country BBQ Ventures (New Brunswick), LLC
### Schedules to Asset Purchase Agreement
### Schedule 5.7 - Encumbrances

| | Lien Holder | Description | Amount |
|---|---|---|---|
| 1 | Wells Fargo Bank | Secured claim incurred on December 1, 2006 on Substantially all of the debtor's assets. | No less than $13,815,922.49 as of December 18, 2009 |

## SCHEDULES TO APA SMITHTOWN

### North Country BBQ Ventures (Smithtown), LLC
### Schedules to Asset Purchase Agreement
### Schedule 5.7 - Encumbrances

| | Lien Holder | Description | Amount |
|---|---|---|---|
| 1 | Wells Fargo Bank | Secured claim incurred on December 1, 2006 on Substantially all of the debtor's assets. | No less than $13,815,922.49 as of December 18, 2009 |
| 2 | GMAC | Auto loan secured by the debtor's truck. | $725.61 |

## SCHEDULES TO APA WESTBURY

**North Country BBQ Ventures (Westbury), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 5.7 - Encumbrances**

| | Lien Holder | Description | Amount |
|---|---|---|---|
| 1 | Wells Fargo Bank | Secured claim incurred on December 1, 2006 on Substantially all of the debtor's assets. | No less than $13,815,922.49 as of December 18, 2009 |
| 2 | GMAC | Auto loan secured by the debtor's truck. | $8,235.06 |
| 3 | New York State Department of Taxation & Finance | Unpaid sales and use tax | Up to $220,265.00 |

## SCHEDULES TO APA WOODBRIDGE

**North Country BBQ Ventures (Woodbridge), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 5.7 - Encumbrances**

| | Lien Holder | Description | Amount |
|---|---|---|---|
| 1 | Wells Fargo Bank | Secured claim incurred on December 1, 2006 on Substantially all of the debtor's assets. | No less than $13,815,922.49 as of December 18, 2009 |
| 2 | GMAC | Auto loan secured by the debtor's truck. | $25,164.68 |

## SCHEDULES TO APA BRICK

**North Country BBQ Ventures (Brick), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 5.9 - Assigned Contracts**

| Contract Holder | Description | Status |
| --- | --- | --- |
| Eighteenth Ventures, LLC | Restaurant Lease | |
| Famous Dave's of America, Inc. | Franchise Agreement | |

## SCHEDULES TO APA HAMILTON

**North Country BBQ Ventures (Hamilton), LLC
Schedules to Asset Purchase Agreement
Schedule 5.9 - Assigned Contracts**

| Contract Holder | Description | Status |
|---|---|---|
| BFW/Pike Associates, LLC | Restaurant Lease | |
| Famous Dave's of America, Inc. | Franchise Agreement | |

## SCHEDULES TO APA MOUNTAINSIDE

**North Country BBQ Ventures (Mountainside), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 5.9 - Assigned Contracts**

| Contract Holder | Description | Status |
|---|---|---|
| The H.B. and D.A. Snyder Foundation | Restaurant Lease | |
| Famous Dave's of America, Inc. | Franchise Agreement | |

71

## SCHEDULES TO APA NEW BRUNSWICK

### North Country BBQ Ventures (New Brunswick), LLC
### Schedules to Asset Purchase Agreement
### Schedule 5.9 - Assigned Contracts

| Contract Holder | Description | Status |
|---|---|---|
| 19 US Highway 1, LLC | Restaurant Lease | |
| Famous Dave's of America, Inc. | Franchise Agreement | |

## SCHEDULES TO APA SMITHTOWN

**North Country BBQ Ventures (Smithtown), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 5.9 - Assigned Contracts**

| Contract Holder | Description | Status |
|---|---|---|
| Jado Associates LLC | Restaurant Lease | Back real estate taxes owed. |
| Famous Dave's of America, Inc. | Franchise Agreement | |

## SCHEDULES TO APA WESTBURY

**North Country BBQ Ventures (Westbury), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 5.9 - Assigned Contracts**

| Contract Holder | Description | Status |
|---|---|---|
| EB Raceway LLC | Restaurant Lease | |
| Famous Dave's of America, Inc. | Franchise Agreement | |

## SCHEDULES TO APA WOODBRIDGE

**North Country BBQ Ventures (Woodbridge), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 5.9 - Assigned Contracts**

| Contract Holder | Description | Status |
|---|---|---|
| FD Woodbridge NJ, LLC | Restaurant Lease | |
| Famous Dave's of America, Inc. | Franchise Agreement | |

## SCHEDULES TO APA BRICK

**North Country BBQ Ventures (Brick), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 5.12 - Employee Benefit & Compensation Plans**

The Debtor currently has a contributory medical, dental and vision employee benefit plan which covers managers who have completed 90 days of continuous, full time employment. Rates and employee contribution amounts are dependent on the insurance policies currently in place. The current policies expire on 3/01/2010.

## SCHEDULES TO APA HAMILTON

**North Country BBQ Ventures (Hamilton), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 5.12 - Employee Benefit & Compensation Plans**

The Debtor currently has a contributory medical, dental and vision employee benefit plan which covers managers who have completed 90 days of continuous, full time employment. Rates and employee contribution amounts are dependent on the insurance policies currently in place. The current policies expire on 3/01/2010.

## SCHEDULES TO APA MOUNTAINSIDE

**North Country BBQ Ventures (Mountainside), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 5.12 - Employee Benefit & Compensation Plans**

The Debtor currently has a contributory medical, dental and vision employee benefit plan which covers managers who have completed 90 days of continuous, full time employment. Rates and employee contribution amounts are dependent on the insurance policies currently in place. The current policies expire on 3/01/2010.

## SCHEDULES TO APA NEW BRUNSWICK

### North Country BBQ Ventures (New Brunswick), LLC
### Schedules to Asset Purchase Agreement
### Schedule 5.12 - Employee Benefit & Compensation Plans

The Debtor currently has a contributory medical, dental and vision employee benefit plan which
covers managers who have completed 90 days of continuous, full time employment.  Rates and
employee contribution amounts are dependent on the insurance policies currently in place.  The
current policies expire on 3/01/2010.

## SCHEDULES TO APA SMITHTOWN

**North Country BBQ Ventures (Smithtown), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 5.12 - Employee Benefit & Compensation Plans**

The Debtor currently has a contributory medical, dental and vision employee benefit plan which covers managers who have completed 90 days of continuous, full time employment. Rates and employee contribution amounts are dependent on the insurance policies currently in place. The current policies expire on 3/01/2010.

## SCHEDULES TO APA WESTBURY

**North Country BBQ Ventures (Westbury), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 5.12 - Employee Benefit & Compensation Plans**

The Debtor currently has a contributory medical, dental and vision employee benefit plan which covers managers who have completed 90 days of continuous, full time employment. Rates and employee contribution amounts are dependent on the insurance policies currently in place. The current policies expire on 3/01/2010.

## SCHEDULES TO APA WOODBRIDGE

### North Country BBQ Ventures (Woodbridge), LLC
### Schedules to Asset Purchase Agreement
### Schedule 5.12 - Employee Benefit & Compensation Plans

The Debtor currently has a contributory medical, dental and vision employee benefit plan which covers managers who have completed 90 days of continuous, full time employment. Rates and employee contribution amounts are dependent on the insurance policies currently in place. The current policies expire on 3/01/2010.

## SCHEDULES TO APA BRICK

**North Country BBQ Ventures (Brick), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 7.8 - Material Vendors**

1    Reinhart Food Service
     226 East View Drive
     Mount Pleasant, PA 15666

2    Edward Don & Company
     2500 South Harlem Avenue
     North Riverside, IL 60546

## SCHEDULES TO APA HAMILTON

### North Country BBQ Ventures (Hamilton), LLC
### Schedules to Asset Purchase Agreement
### Schedule 7.8 - Material Vendors

1   Reinhart Food Service
    226 East View Drive
    Mount Pleasant, PA 15666

2   Edward Don & Company
    2500 South Harlem Avenue
    North Riverside, IL 60546

## SCHEDULES TO APA MOUNTAINSIDE

**North Country BBQ Ventures (Mountainside), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 7.8 - Material Vendors**

1    Reinhart Food Service
     226 East View Drive
     Mount Pleasant, PA 15666

2    Edward Don & Company
     2500 South Harlem Avenue
     North Riverside, IL 60546

## SCHEDULES TO APA NEW BRUNSWICK

**North Country BBQ Ventures (New Brunswick), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 7.8 - Material Vendors**

1   Reinhart Food Service
    226 East View Drive
    Mount Pleasant, PA 15666

2   Edward Don & Company
    2500 South Harlem Avenue
    North Riverside, IL 60546

## SCHEDULES TO APA SMITHTOWN

**North Country BBQ Ventures (Smithtown), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 7.8 - Material Vendors**

1   Reinhart Food Service
    226 East View Drive
    Mount Pleasant, PA 15666

2   Edward Don & Company
    2500 South Harlem Avenue
    North Riverside, IL 60546

## SCHEDULES TO APA WESTBURY

**North Country BBQ Ventures (Westbury), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 7.8 - Material Vendors**

1   Reinhart Food Service
    226 East View Drive
    Mount Pleasant, PA 15666

2   Edward Don & Company
    2500 South Harlem Avenue
    North Riverside, IL 60546

## SCHEDULES TO APA

**North Country BBQ Ventures (Woodbridge), LLC**
**Schedules to Asset Purchase Agreement**
**Schedule 7.8 - Material Vendors**

1   Reinhart Food Service
    226 East View Drive
    Mount Pleasant, PA 15666

2   Edward Don & Company
    2500 South Harlem Avenue
    North Riverside, IL 60546

**Exhibit A**

**Form of Bill of Sale**

## BILL OF SALE

**KNOW ALL PERSONS BY THIS INSTRUMENT** that, pursuant to the terms and conditions of that certain Asset Purchase Agreement dated as of December 17, 2009, as amended by that certain Amendment No. 1 to Asset Purchase Agreement dated effective as of December 23, 2009, as amended and restated by that certain Amended and Restated Asset Purchase Agreement dated effective as of February 26, 2010 (collectively, the "**Asset Purchase Agreement**") by and between Famous Dave's of America, Inc., a Minnesota corporation ("**Purchaser**"), and North Country BBQ Ventures, Inc., a Delaware corporation ("**NC BBQ**"), North Country BBQ Ventures (Smithtown), LLC, a Delaware limited liability company ("**Smithtown**"), North Country BBQ Ventures (Westbury), LLC, a Delaware limited liability company ("**Westbury**"), North Country BBQ Ventures (Mountainside), LLC, a Delaware limited liability company ("**Mountainside**"), North Country BBQ Ventures (Brick), LLC, a Delaware limited liability company ("**Brick**"), North Country B.B.Q. Ventures (Hamilton), LLC, a Delaware limited liability company ("**Hamilton**"), North Country BBQ Ventures (New Brunswick), LLC, a Delaware limited liability company ("**New Brunswick**"), North Country BBQ Ventures (Manchester), LLC, a Delaware limited liability company ("**Manchester**"), North Country BBQ Ventures (Woodbridge), LLC, a Delaware limited liability company ("**Woodbridge**"), North Country BBQ Ventures (Hillsborough), LLC, a Delaware limited liability company ("**Hillsborough**") (NC BBQ, Smithtown, Westbury, Mountainside, Brick, Hamilton, New Brunswick, Manchester, Metuchen and Hillsborough are hereinafter each referred to individually as a "**Seller**" and collectively as the "**Sellers**"), for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Sellers do hereby sell, transfer, convey, assign and deliver unto Purchaser's designee, Famous Dave's RIBS, Inc., a Minnesota corporation, its successors and assigns as of the Closing, the following assets (hereinafter referred to collectively as the "**Purchased Assets**"). Capitalized terms used but not defined herein shall have the meaning assigned to such terms in the Asset Purchase Agreement:

(a)     all furniture, fixtures, equipment, smallwares, machinery, computers, point of sale hardware and software, décor items, memorabilia and other tangible personal property used or held in the Business in connection with each of the "Restaurant Locations" listed below (hereinafter referred to collectively as the "**Purchased Business**") including, but not limited to, all of the personal property identified in Schedule 1 hereto;

| Restaurant Location | Seller |
|---|---|
| 720 Smithtown Bypass, Smithtown, New York | Smithtown |
| 1050 Corporate Drive, Westbury, New York | Westbury |
| 1443 Route 22 East, Mountainside, New Jersey | Mountainside |
| 950 Cedar Bridge Avenue, Brick Township, New Jersey | Brick |
| 4215 Black Horse Pike, Hamilton (Mays Landing), New Jersey | Hamilton |
| 23 U.S. Highway, Route 1 South, New Brunswick, New Jersey | New Brunswick |
| 53 Lafayette Avenue, Metuchen, New Jersey | Woodbridge |

(b)     all right, title and interest of Sellers in and to all Real Estate Leases and all Franchise Agreements for the Purchased Business, *[excluding only the Real Estate Lease and the Franchise Agreement for the Woodbridge location]* (the "**Assigned Contracts**");

91

(c)     all inventory, raw materials and supplies of the Purchased Business, wherever located, including but not limited to all rights of Sellers as to all suppliers associated with the Purchased Business, together with all uniforms, paper goods and promotional items used by Sellers in the operation of the Purchased Business;

(d)     unlimited access to during reasonable business hours and notice and the ability of Purchaser and its designee, Famous Dave's Ribs, Inc., to make copies of the Business Books and Records for the Purchased Business for up to six (6) months after the Closing Date;

(e)     all rights of Sellers under any warranty or guarantee by any manufacturer, supplier or other transferor of the Purchased Assets for the Purchased Business;

(f)     all of the intangible rights and property used in Sellers' conduct of the Purchased Business, including without limitation, Sellers' intellectual property rights to technology, licenses, construction or plans, drawings, memos, blueprints, and other work product of consultants or architects, telephone numbers, telecopy numbers and e-mail addresses and listings relating to the Purchased Business;

(g)     to the extent legally transferable, all permits, licenses and approvals received from any governmental entity for the Purchased Business;

(h)     all leasehold improvements, signage and prepaid deposits in the possession of the applicable non-Seller counterparties for the Purchased Business;

(i)     all rights, claims and causes of action of Sellers against third parties relative to the Purchased Assets and the proceeds thereof, excluding Avoidance Claims, tort claims against Sellers' current and former officers and directors, credit card payments that are in process as of the date hereof and that originate from sales occurring prior to and including the Closing Date, and claims giving rise to Sellers' rights of set off with respect to their respective creditors; and

(j)     any and all other properties, assets and rights of Sellers which are used in Sellers' conduct of the Business and are not Excluded Assets.

**TO HAVE AND TO HOLD**, said assets and properties unto Famous Dave's RIBS, Inc., a Minnesota corporation, its successors and assigns, to and for their use forever. This conveyance is made with and subject to the representations, warranties, terms, conditions, disclaimers, covenants and agreements set forth in the Asset Purchase Agreement, the terms of which are incorporated herein by this reference. Sellers hereby covenant and agree to execute and deliver, at the request of Purchaser or its designee, Famous Dave's RIBS, Inc., such further instruments of sale, transfer, conveyance, assignment and confirmation, as shall be helpful, necessary and/or appropriate to effectuate the transfer of the Purchased Assets.

**IN WITNESS WHEREOF**, Sellers have caused this Bill of Sale to be executed as of the _____ day of February, 2010.

North Country BBQ Ventures, Inc.,
a Delaware corporation


By:_____
    David A. Reilly
    Its Chief Financial Officer


North Country BBQ Ventures (Smithtown), LLC
a Delaware limited liability company
By North Country BBQ Ventures, Inc.,
its Managing Member


By:_____
    David A. Reilly
    Its Chief Financial Officer


North Country BBQ Ventures (Westbury), LLC
a Delaware limited liability company
By North Country BBQ Ventures, Inc.,
its Managing Member


By:_____
    David A. Reilly
    Its Chief Financial Officer


North Country BBQ Ventures (Mountainside), LLC
a Delaware limited liability company
By North Country BBQ Ventures, Inc.,
its Managing Member


By:_____
    David A. Reilly
    Its Chief Financial Officer


*[Signature Page – Bill of Sale dated February __, 2010]*

North Country BBQ Ventures (Brick), LLC
a Delaware limited liability company
By North Country BBQ Ventures, Inc.,
its Managing Member


By:_____
    David A. Reilly
    Its Chief Financial Officer


North Country B.B.Q. Ventures (Hamilton), LLC
a Delaware limited liability company
By North Country BBQ Ventures, Inc.,
its Managing Member


By:_____
    David A. Reilly
    Its Chief Financial Officer


North Country BBQ Ventures (New Brunswick), LLC
a Delaware limited liability company
By North Country BBQ Ventures, Inc.,
its Managing Member


By:_____
    David A. Reilly
    Its Chief Financial Officer


North Country BBQ Ventures (Woodbridge), LLC
a Delaware limited liability company
By North Country BBQ Ventures, Inc.,
its Managing Member


By:_____
    David A. Reilly
    Its Chief Financial Officer


*[Signature Page – Bill of Sale dated February ___, 2010]*

**Schedule 1**

**Personal Property**

**Exhibit B**

**Form of Assignment and Assumption Agreement**

## ASSIGNMENT AND ASSUMPTION AGREEMENT

**THIS ASSIGNMENT AND ASSUMPTION AGREEMENT** (this "**Agreement**"), is entered into this ___ day of February, 2010, by and between North Country BBQ Ventures, Inc., a Delaware corporation ("**NC BBQ**"), North Country BBQ Ventures (Smithtown), LLC, a Delaware limited liability company ("**Smithtown**"), North Country BBQ Ventures (Westbury), LLC, a Delaware limited liability company ("**Westbury**"), North Country BBQ Ventures (Mountainside), LLC, a Delaware limited liability company ("**Mountainside**"), North Country BBQ Ventures (Brick), LLC, a Delaware limited liability company ("**Brick**"), North Country B.B.Q. Ventures (Hamilton), LLC, a Delaware limited liability company ("**Hamilton**"), North Country BBQ Ventures (New Brunswick), LLC, a Delaware limited liability company ("**New Brunswick**"), North Country BBQ Ventures (Woodbridge), LLC, a Delaware limited liability company ("**Woodbridge**") (NC BBQ, Smithtown, Westbury, Mountainside, Brick, Hamilton, New Brunswick and Woodbridge are hereinafter each referred to individually as an "**Assignor**" and collectively as the "**Assignors**") and Famous Dave's RIBS, Inc., a Minnesota corporation ("**Assignee**"), as the designee of the Purchaser defined in the Asset Purchase Agreement (defined below). Capitalized terms used but not defined herein shall have the meaning assigned to such terms in the Asset Purchase Agreement (defined below).

WHEREAS, Assignors and Famous Dave's of America, Inc. have entered into that certain Asset Purchase Agreement dated as of December 17, 2009, as amended by that certain Amendment No. 1 to Asset Purchase Agreement dated effective as of December 23, 2009, as amended and restated by that certain Amended and Restated Asset Purchase Agreement dated effective as of February 26, 2010 (collectively, the "**Asset Purchase Agreement**"), pursuant to which Assignee purchased as of the date hereof substantially all of the assets of Assignors relating to Assignors' operation of restaurants at each "Restaurant Location" identified below and utilizing the "Famous Dave's" concept and trademarks (collectively, the "**Purchased Business**"); and

| Restaurant Location | Assignor |
|---|---|
| 720 Smithtown Bypass, Smithtown, New York | Smithtown |
| 1050 Corporate Drive, Westbury, New York | Westbury |
| 1443 Route 22 East, Mountainside, New Jersey | Mountainside |
| 950 Cedar Bridge Avenue, Brick Township, New Jersey | Brick |
| 4215 Black Horse Pike, Hamilton (Mays Landing), New Jersey | Hamilton |
| 23 U.S. Highway, Route 1 South, New Brunswick, New Jersey | New Brunswick |
| 53 Lafayette Avenue, Metuchen, New Jersey | Woodbridge |

WHEREAS, pursuant to Article 2 of the Asset Purchase Agreement, Assignors have agreed to assign certain rights and agreements of Assignors, and Assignee has agreed to assume certain obligations of Assignors.

NOW THEREFORE, for and in consideration of the premises and the mutual covenants contained herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereby agree as follows:

1.     <u>Assignment and Assumption</u>.  Effective as of the Closing, Assignors do hereby assign, transfer and set over to Assignee all of Assignors' rights, title and interest in and to, and all of Assignors' burdens, obligations and liabilities relating to those obligations of Assignors identified in Article 2 of the Asset Purchase Agreement and in Schedule 1 hereto (the "**Assumed Obligations**").  Assignee hereby accepts the assignment and assumes and agrees to observe and perform all of the duties, obligations, terms, provisions and covenants, and to pay and discharge all of the liabilities of Assignors to be observed, performed, paid or discharged from and after the date of Closing relating to the Assumed Obligations.  Assignee shall be solely liable for all Taxes, liabilities and obligations arising from ownership of the Purchased Business, operation of the Purchased Business and incidents and occurrences beginning on the first day following the Closing Date and thereafter.  All liability associated with any gift cards issued by Assignors that are outstanding on the Closing Date shall constitute part of the "Assumed Obligations" for purposes of this Agreement and the Asset Purchase Agreement.  Assignee assumes no liabilities or obligations of Assignors other than the Assumed Obligations, and the parties hereto agree that all other liabilities and obligations of Assignors shall remain the sole responsibility of Assignors.  Assignee acknowledges that it has read the leases set forth on Schedule 1 and has received the original or an exact copy of each of said leases.  Assignee agrees that the obligations it assumes shall benefit the landlords named in said leases as well as the Assignors.  Assignors assign to the Assignee all the Assignors' rights, and interest in the leases set forth on Schedule 1 and  the security deposit, if any, stated in said leases.  Assignee agrees to pay the rent promptly and perform all of the terms of the leases as of the date of this Assignment. Assignee assumes full responsibility for the leases as if Assignee signed the leases originally as tenant.

2.     <u>Terms of Asset Purchase Agreement</u>.  This conveyance is made with and subject to the representations, warranties, terms, conditions, disclaimers, covenants and agreements set forth in the Asset Purchase Agreement, the terms of which are incorporated herein by this reference.

3.     <u>Further Actions</u>.  Each of the parties hereto covenants and agrees to execute and deliver, at the request of the other party hereto, such further instruments of transfer and assignment and to take such other action as such other party may reasonably request to more effectively consummate the assignments and assumptions contemplated by this Agreement.

4.     <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be considered an original, and signatures for this Agreement may be delivered by facsimile or other means of electronic transmission, and any such signature shall be considered valid and binding to the same extent as delivered original signatures.

5.     <u>Successors and Assigns</u>. This Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and assigns.

IN WITNESS WHEREOF, the parties have executed this Assignment and Assumption Agreement as of the date first above written.

**ASSIGNORS:**

North Country BBQ Ventures, Inc.,
a Delaware corporation

By:_____
      David A. Reilly
      Its Chief Financial Officer

North Country BBQ Ventures (Smithtown), LLC
a Delaware limited liability company
By North Country BBQ Ventures, Inc.,
its Managing Member

By:_____
      David A. Reilly
      Its Chief Financial Officer

North Country BBQ Ventures (Westbury), LLC
a Delaware limited liability company
By North Country BBQ Ventures, Inc.,
its Managing Member

By:_____
      David A. Reilly
      Its Chief Financial Officer

North Country BBQ Ventures (Mountainside), LLC
a Delaware limited liability company
By North Country BBQ Ventures, Inc.,
its Managing Member

By:_____
      David A. Reilly
      Its Chief Financial Officer

*[Signature Page – Assignment and Assumption Agreement dated February __, 2010]*

North Country BBQ Ventures (Brick), LLC
a Delaware limited liability company
By North Country BBQ Ventures, Inc.,
its Managing Member


By:_____
    David A. Reilly
    Its Chief Financial Officer


North Country B.B.Q. Ventures (Hamilton), LLC
a Delaware limited liability company
By North Country BBQ Ventures, Inc.,
its Managing Member


By:_____
    David A. Reilly
    Its Chief Financial Officer


North Country BBQ Ventures (New Brunswick), LLC
a Delaware limited liability company
By North Country BBQ Ventures, Inc.,
its Managing Member


By:_____
    David A. Reilly
    Its Chief Financial Officer


North Country BBQ Ventures (Woodbridge), LLC
a Delaware limited liability company
By North Country BBQ Ventures, Inc.,
its Managing Member


By:_____
    David A. Reilly
    Its Chief Financial Officer


*[Signature Page – Assignment and Assumption Agreement dated February __, 2010]*

**ASSIGNEE:**

FAMOUS DAVE'S OF AMERICA, INC.
a Minnesota corporation

By:_____
        Diana G. Purcel
        Its Chief Financial Officer

*[Signature Page – Assignment and Assumption Agreement dated February ___, 2010]*

101

**Schedule 1**

**Additional Assumed Obligations**

All Real Estate Leases and all Franchise Agreements for the Purchased Business *[excluding only the Real Estate Lease and the Franchise Agreement for the Woodbridge location]*

LA1 1759237v.6